407 P.2d 385

**CYR & EVANS CONTRACTING CO.,**
an Arizona corporation, Appellee,

v.

**Milton H. GRAHAM, Mayor, and Jay Hyde, Jarrett S. Jarvis, Mrs. Sophia Kruglick, Jack H. Laney, Herb Lindner and Dr. Ray M. Pisano, Members of and constituting the City Council of the City of Phoenix, a political subdivision of the State of Arizona, Appellants.**

**No. 1 CA–CIV 95.**

Court of Appeals of Arizona.

Nov. 8, 1965.

Rehearing Denied Jan. 12, 1966.
Review Denied Feb. 10, 1966.

Moore, Romley, Kaplan, Robbins & Green, by Curtis A. Jennings, Phoenix, for appellee.

Merle L. Hanson, City Atty., Melvin J. Mirkin, Asst. City. Atty., Phoenix, for appellants.

MOLLOY, Judge.

This is an appeal from a peremptory writ of mandamus granted by the lower court against the City of Phoenix requiring it to let a street paving contract to a certain bidder so as to give effect to A.R.S. § 34–241, the "five per cent preference" statute. This statute requires a preference to be given in letting bids on " * * * contracts for public work to be performed on behalf of the state or any political subdivision thereof, which will be paid for from public funds * * * " so that a contractor who has paid certain state and county taxes must be granted the contract if a better bid by a non-qualified contractor is less than five per cent lower.

The street improvement involved is one contemplated to be performed under the provisions of A.R.S. § 9–671 et seq., a law which permits the municipality to do certain street work and to assess the cost of such work to the real property specially benefited. If the improvement is of more than "local or ordinary public benefit" so as to be of special benefit to property other than that fronting on the improvement, the governing body of the city is authorized to determine the extent of a district upon which the cost of the improvement contemplated will be charged. A.R.S. § 9–673. If no such district is established, the cost of the improvement is assessed against the property fronting upon the street improved. A.R.S. § 9–686, subsection D. The municipality may order that the whole or any part of the cost of the work be paid by the municipality from its funds. A.R.S. § 9–680.

In this case the city determined that the entire cost of the improvement should be borne by a district, delineated in the resolution of intention, and that bonds should be issued for the cost of the improvement as contemplated by the Act. A.R.S. § 9–692. The cost so determined to be assessed includes all incidental expenses of the city in connection with the project. A.R.S. § 9–686, subsection E. The contractor who performs the work is paid by a transfer of the assessments placed against the property in the district and of the bonds issued in pursuance of the Act. A.R.S. § 9–683, subsection E and A.R.S. § 9–694, subsection C. Special assessments placed against the property benefited can be paid in cash by the property owners after the work has been performed and a warrant for the particular assessments presented by the contractor. A.R.S. § 9–687. Assessments of less than $25.00 are not bonded, but must be paid in cash by the property owner. A.R.S. § 9–693. Under the Act, bonds for all assessments not paid as above would be issued in the name of the City of Phoenix and the bonds would provide that they were " * * payable only out of the special fund to be collected from special assessments imposed on the lots, or parcels of land fronting on or benefited by said improvement." A.R.S. § 9–695.

If an installment becomes delinquent, the city is required to cause the property assessed to be sold " * * * for the entire assessment including the delinquent installments, * * * " and if there is no buyer for the property, the municipality is required to purchase the property and to appropriate from "the general fund" the amount bid and to place such sum in the "special fund" for the payment of the bonds. A.R.S. § 9–700.

The bids received by the respondent City for the particular work in question included one from Pete Horner Excavating, Inc. (intervenor herein) in the sum of $69,841.-81 and one received from Cyr & Evans Contracting Co. (petitioner herein) in the sum of $72,941.79. It is admitted in the pleadings that the petitioner would be qualified under the provisions of A.R.S. § 34–241, referred to above, for a five per cent preference and that the intervenor, Pete Horner Excavating, Inc., would not. The case was submitted to the lower court on a stipulation to the effect that all acts of the city in the premises were lawful and correct except for

the question of whether or not A.R.S. § 34-241 applies to the project in question.

On appeal, the city contends that A.R.S. § 34-241 is not applicable in the premises because (1) the City of Phoenix is a "charter" city and as such is immune from the provisions of the subject statute and (2) A.R.S. § 34-241, by its express terms, does not apply to a contract of the type under consideration in that this contract is not one for public work " * * * to be paid for from public funds."

■ In its oral argument, counsel for the city contended that this court should overrule the decision in Schrey v. Allison Steel Mfg. Co., 75 Ariz. 282, 255 P.2d 604 (1953), which held that A.R.S. § 34-241 is applicable to a non-charter city when doing work to be paid for from the general fund and that the same, when so applied, is constitutional.

We dispose of this contention first. We have examined the Schrey decision and see no impelling reason not to follow it. This court considers itself to be bound by it.

■ We proceed next to the question of the applicability of A.R.S. § 34-241 because we believe it to be dispositive of the case. The rule in this state with respect to the problem of statutory construction at hand, appears to be that "All doubts in the grant of a special privilege by statute should be strictly construed against those who claim it." Parrack v. Ford, 68 Ariz. 205, 203 P.2d 872 (1949). That case held that where the statutory language was ambiguous as to whether preference of five per cent should be given to veterans on civil service examinations, the language would be construed against the granting of the privilege.

■ We believe it is proper, on a close question of statutory construction, to look to the statute's history. The preference law involved in this case was adopted as a part of Ch. 12 of the Laws of 1933 as section 3 thereof. When so adopted it read as follows:

"Hereafter, in the letting of bids for any contract for public work to be performed on behalf of the state of Arizona, or any political subdivision thereof, *and to be* paid for out of public funds, no bid shall be recognized for the performance of a contract including construction work which is not made by a bidder duly licensed as a contractor in the state of Arizona and in awarding the contract for any work to be paid for out of public funds, bids of contractors who have not been found unsatisfactory in prior public contracts and who have paid state and county taxes within the state of Arizona for not less than two successive years immediately prior to the making of said bid on a plant and equipment such as is ordinarily required for the performance of the contract for which such bid is made, or on other real or personal property in the state of Arizona equivalent in value to such plant, shall be deemed a better bid than the bid of any competing contractor who has not so paid taxes, whenever the bid of such competing contractor shall be less than five per cent lower and the contractor making such bid herein provided to be deemed the better bid, shall be awarded the contract. No contract hereafter awarded for *such* public work shall be sublet to a sub-contractor who has not paid taxes as hereinabove specified." (Emphasis added)

■ The few words italicized in the above quotation were part of the language that was altered in the 1956 revision of our code. These changes in wording appear to be of the type intended to clarify, simplify and/or shorten the verbiage, without affecting the original meaning substantially.[1]

1. This section of the 1933 Act is now A.R.S. § 34-241, reading:

"A. When calling for bids for contracts for public work to be performed on behalf or the state or any political subdivision thereof, which will be paid for from public funds, no bid shall be considered for performance of a contract, including construction work which is not

Therefore, it is proper to look at the original wording to attempt to arrive at the original legislative intent. City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964).

Such an examination is helpful in testing one of the arguments made by the petitioner to support its thesis that the words " * * * to be paid for from public funds * * *" have no particular meaning in this statute. This argument relies upon the wording of what is now A.R.S. § 34–241, subsection C which reads as follows:

"No contract awarded *for public work* shall be sublet to a sub-contractor who has not paid taxes as required by this section." (Emphasis added)

Petitioner contends it would be illogical to infer that this subsection pertaining to subcontracts is any broader in scope than the subsections which precede it pertaining to contractors. The omission of the words "to be paid for from public funds" from this last provision indicates, according to this argument, that these words have no real significance in the preceding paragraphs. We believe the true legislative intent can be gleaned from the original enactment which provided that this subcontractor restriction was to apply to " * * * *such* public work," that is, public work " * * * to be paid for out of public funds * *."

The sole objective of all statutory construction is to arrive at the true intent of the legislature. City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964). It is to be noted that the 1933 statute under consideration is section 3 of an Act which in sections 1 and 2 thereof provided for minimum wages and maximum hours and for the employment of only bona fide residents in public work. In these first two sections of this same Act, there is a significant difference in language from that used in section 3. Section 1 of this Act applies to all work performed by " * * * persons doing manual or mechanical labor employed by or on behalf of the state, or any of its political subdivisions * * *" and section 2 applies to " * * * public work hereafter let by the state of Arizona, or any of its political subdivisions * * *." There is no counterpart language in these sections to " * * * to be paid for out of public funds * * *."

In Highland Park Realty Co. v. City of Tucson, 46 Ariz. 10, 46 P.2d 641 (1935), our Supreme Court followed what it said was a minority rule in holding that work performed under this street improvement act is "public work." But its opinion recognized that there is a distinction between the character of such work as this and the mode of payment therefor. Part of a quotation from Malette v. City of Spokane, 77 Wash. 205, 137 P. 496, 503, 51 L.R.A., N.S., 686 (1913), included in the Supreme Court's opinion, is as follows:

"We must not confuse the mode of payment for public work with the character of the work." 46 Ariz. 10, 19, 46 P.2d 645 (1935)

In its brief, the petitioner asks the pointed question: "If money or revenue raised by special assessments are not public funds, as appellants contend, then what kind of funds are they? "

submitted by a bidder duly licensed as a contractor in this state.

"B. In awarding the contract for work to be paid for from public funds, bids of contractors who have satisfactorily performed prior public contracts, and who have paid state and county taxes within the state for not less than two successive years immediately prior to submitting a bid on a plant and equipment such as is ordinarily required for performance of the contract for which the bid is submitted, or on other real or personal property in the state equivalent in value to such plant, shall be deemed a better bid than the bid of a competing contractor who has not paid such taxes, whenever the bid of the competing contractor is less than five per cent lower, and the contractor making a bid, as provided by this section, which is deemed the better bid, shall be awarded the contract.

"C. No contract awarded for public work shall be sublet to a sub-contractor who has not paid taxes as required by this section."

We do not believe that this decision will determine what "public funds" are in the abstract. The problem at hand is to determine what is meant by the particular words in the particular statute. The appellee cites the statutory definition of "public monies" contained in A.R.S. § 35–302 as being pertinent. This definition states that " * * * 'public money' *as used in this article* * *" (emphasis added) includes money received by city or town officers " * * * in their official capacity." It is in an article making it a felony to misappropriate public money. By its very terms this statutory definition is not controlling here.

No case directly in point has been cited to this court, though there are numerous cases to be found defining "public funds" or "public money" in various contexts. As close to being in point as any is the case of City of Seattle v. Stirrat, 55 Wash. 560, 104 P. 834, 24 L.R.A., N.S., 1275 (1909) holding that monies collected from property owners for a street improvement are not "money of the city" under a charter provision. This court said:

> "It is only moneys raised by the operation of some general law that become 'moneys of the city,' or 'moneys belonging to the city,' or 'public funds,' or 'public moneys,' and subject to the charter provision with reference to their deposit. Such laws, whether they be general or special, can have no reference to such funds as may come to a municipality through methods with which the public as a whole has no concern." 104 P. 834, 836 (1909).

The funds raised by such special assessments as those under consideration patently do not equitably belong to the City of Phoenix. The funds collected by municipalities under similar statutes are generally regarded as trust funds:

> "Money collected by officers of a municipality in payment of special assessments levied for improvements constitutes a trust fund, and the municipality, although having title to the fund, is a trustee for the bond holders." 15 McQuillin (3d ed.) § 43.136, pp. 707–708.

■ It appears clearly to be the law of this state that the indebtedness incurred by reason of such special assessments is not the indebtedness of the political subdivision performing the public work within the contemplation of the constitutional debt limits on municipalities. Wise v. First National Bank, 49 Ariz. 146, 158, 65 P.2d 1154 (1937); Collins v. City of Phoenix, 54 F.2d 770 (9th Cir.1931).

It is very apparent that the property owners assessed, in addition to the bond holders, have some interest in the funds which are paying for these improvements. Does this render the funds "public" in the sense that that word is used in the subject statute? We think not. It must be remembered that the "district" designated by the municipality to pay for the particular improvement in question is in no sense a political subdivision. It has no officers and no executive, legislative or administrative functions whatever. The first definition of the word "public" in Webster's Third New International Dictionary is: "Of, relating to, or affecting the people as an organized community." If this were the meaning of the word "public" in the subject statute, it would not refer to the "district" paying for the cost of the improvement, for it is in no sense organized.

In the early case of City of Globe v. Willis, 16 Ariz. 378, 146 P. 544 (1915), it was held that section 13 Art. 7 has no application to bonds issued under the subject Act. This provision in our Constitution reads:

> " 'Questions upon bond issues or special assessments shall be submitted to the vote of real property taxpayers, who shall also in all respects be qualified electors of this state, and of the *political subdivisions* thereof affected by such question.' " 16 Ariz. 378, 381, 146 P. 544, 545 (1915)

The reasoning of the court was that:

"Bond issues and special assessments that do not become a direct charge against the municipality, and do not increase its indebtedness, cannot be said to 'affect' it, and are not under this provision of the Constitution to be submitted to a vote as therein prescribed." 16 Ariz. 378, 382, 146 P. 544, 545 (1915)

Though this opinion does not specifically so state, it is implicit in the court's holding that the property assessed under this street improvement act does not constitute a "political subdivision" so as to require a vote within such "district" under the above quoted provision of our Constitution.

Under the provisions of the subject Act, it is very possible that there might be only one property owner within the district assessed. This would not be at all uncommon, as a matter of fact, in this day of rapid expansion of residential communities by the process of subdividing large tracts of land. It is not beyond the realm of possibility that the special funds held by the city to satisfy these bonds might be held by the city in trust for no more than two persons, a bond holder who might have purchased all of the bonds and a property owner who might own all of the property assessed. While in one sense these persons might be a part of the public, we do not believe the funds held for their benefit by the city under this act are "public funds" in the sense those words were used in the subject statute.

In construing statutory language, it is the court's duty to give meaning to all of the words used, if it is possible to do so reasonably. City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964). The appellee's main position here is that the words "* * * to be paid for from public funds * * *" have no real significance. We believe that something was intended by this language and can conceive of only rare and improbable situations where this language, specially included in this section, would have any real meaning unless it were

to be held to except from this statute public work contracts to be paid for with funds which equitably belong to private individuals such as the funds we are here considering.

It seems reasonable that the legislature would not intend to grant a preference to contractors who have paid "* * * state and county taxes * * *" as to work to be paid for by a relatively small portion of a city which might not even be located in the county in which the contractor has been paying taxes. One of the reasons for upholding the tax when applied to municipalities was stated by the court in Schrey as follows:

"We believe and therefore hold that the state, in contracting for the expenditure of tax money, had a reasonable basis for granting a five per cent preference to contractors who, through the payment of taxes for two years, have made a contribution to the funds from which they are to reap a benefit." 75 Ariz. 282, 287, 255 P.2d 604, 607 (1953)

It seems very apparent that the contractor to whom preference will be given under this Act will not usually have made any contribution to the "district" assessed with the cost of public work under the subject Act.

The fact that the city is contingently liable, to the remote extent that it is, for delinquent improvement assessments should not change the basic nature of the funds paying for this work. There is no showing here that any monies of the City of Phoenix will ever go to pay for this work. Under the same reasoning that excepted this contingent obligation from the constitutional debt limitations imposed upon cities (Wise v. First National Bank, 49 Ariz. 146, 158, 65 P.2d 1154 (1937), the funds paying for this work should not be constituted "public funds" within the purview of this particular statute simply by reason of this contingent liability of the city.

Holding, as we do, that this statute is not applicable to the contract in question, we do

not find it necessary or proper that a determination be made as to whether A.R.S. § 34–241 is applicable to a charter city such as Phoenix.

The judgment of the trial court is reversed.

KRUCKER, C. J., and HATHAWAY, J., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.