509 P.2d 1038

**The CITY OF PHOENIX, a political sub-
division of the State of Arizona, and
Orville Larry Bryant, Appellants,**

v.

**WITTMAN CONTRACTING CO., an
Arizona corporation, Appellee.**

**No. I CA–CIV 2252.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 10, 1973.

Joe R. Purcell, City Atty., by Patrick E. Burke, Asst. City Atty., Phoenix, for appellant, City of Phoenix.

Law Offices of Frederick E. Kallof by Frederick E. Kallof and Sandra L. Massetto, Phoenix, for appellant Bryant.

Mariscal, Weeks, Lehman & Whitten, P.A., by Phillip Weeks, Phoenix, for appellee.

DONOFRIO, Presiding Judge.

The appellee, Wittman Contracting Co., hereinafter referred to as Wittman, is an Arizona corporation duly licensed as a contractor. The appellants are the City of Phoenix, and Orville Larry Bryant Construction Co., hereinafter referred to as Bryant.

The pertinent facts for this appeal, which have been stipulated to by the parties, are as follows. In mid-1972 the City of Phoenix published a notice to contractors inviting bids on the construction of a water line on Southern Avenue, from 16th Street to 36th Street, in the City of Phoenix. The project was designated City of Phoenix Project No. W–71215. Appellant Bryant and Appellee Wittman were among those submitting bids, with Bryant submitting the lowest bid and Wittman the next lowest bid. Bryant's bid was less than 5% lower than the bid submitted by Wittman.

Wittman has apparently performed prior public contracts and done so successfully. It paid state and county taxes for at least two successive years immediately prior to submitting the above bid on plant and equipment ordinarily required for the performance of the project contemplated by the City. Bryant has not paid state and county taxes in this regard. Wittman requested a 5% preference from the City of Phoenix, pursuant to A.R.S. § 34–241, in the award of the contract, but said request was denied by the City. If the City had allowed the preference, Wittman would have been the lowest bidder. The City eventually awarded the contract to Bryant.

Wittman then filed a special action in the Maricopa County Superior Court, requesting the court to find that the City's actions were contrary to the provisions of A.R.S. § 34–241, and thus arbitrary and capricious, and to grant relief enjoining the City from awarding the contract to Bryant. The trial court found that A.R.S. § 34–241 was applicable, and entered an order enjoining the City of Phoenix from contracting with Bryant for the performance of Project No. W–71215. It further ordered the City to enter into a contract with Wittman for the performance of the aforesaid project. This appeal was then filed by the City and Bryant, questioning the propriety of the trial court's judgment.

The principal questions raised on appeal are as follows:

1. Did the court exceed its jurisdiction in granting what was in effect mandamus relief?

2. Is A.R.S. § 34–241 applicable to a project to be financed from funds derived from the sale of revenue

bonds issued pursuant to Art. 3, Ch. 5, Title 9?

3. Assuming A.R.S. § 34–241 to be applicable to the circumstances of this case, to what extent may the City of Phoenix or any other political subdivision exercise its discretion in awarding a public contract?

Referring to question No. 1, besides contending that the mandamus relief granted by the trial court was beyond the jurisdiction and legal authority of that court, the appellants argue that even if such relief is proper, Wittman has no standing to sue. The law in Arizona appears quite clear on both points.

▮▮▮▮ The Arizona Supreme Court has at least implicitly found that a special action proceeding would lie against a political subdivision of the State, and that appropriate relief may be awarded against it where its actions are "arbitrary or capricious." City of Phoenix v. Superior Court in and for County of Maricopa, 109 Ariz. 533, 514 P.2d 454, Supreme Court No. 11094, (order affirming decision of trial court entered Jan. 31, 1973, formal opinion to follow); Brown v. City of Phoenix, 77 Ariz. 368, 272 P.2d 358 (1954); Schrey v. Allison Steel Mfg. Co., 75 Ariz. 282, 255 P.2d 604 (1953). More specifically, it has been found that when a municipality acts arbitrarily or capriciously in awarding a public contract, the Superior Court has jurisdiction by way of mandamus to order the municipality to make a specific award of the contract. Brown v. City of Phoenix, supra; Schrey v. Allison Steel Mfg. Co., supra. Further, we agree with appellee's position that both Brown and Schrey stand for the proposition that an unsuccessful bidder, arbitrarily and capriciously refused award of a public contract, is a "party beneficially interested" with sufficient standing to seek mandamus relief. 4 A.R.S. § 12–2021. In both Brown and Schrey, the political subdivision was directed to award the public contract to a reasonably identifiable bidder, e.g., the "highest responsible bidder." Upon the strength of those decisions we find that not only did Wittman have standing to bring the action, and the Superior Court have jurisdiction to grant mandamus relief, but that the trial court, if it found that the subdivision had acted arbitrarily or capriciously, could direct the subdivision to award the public contract to a particular bidder, such as was done in this case.

Having determined that the Superior Court could validly act in this suit, we must next consider whether the Council of the City of Phoenix acted arbitrarily or capriciously in awarding the contract to Bryant. We therefore must first discuss the applicability of A.R.S. § 34–241 which provides in pertinent part as follows:

"§ 34–241. Eligibility of contractors for employment on public works; license required; preferred contractors; eligibility for employment as subcontractor

"A. When calling for bids for contracts for public work to be performed on behalf of the state or any political subdivision thereof, *which will be paid for from public funds,* no bid shall be considered for performance of a contract, including construction work which is not submitted by a bidder duly licensed as a contractor in this state.

"B. In awarding the contract for work *to be paid for from public funds,* bids of contractors who have satisfactorily performed prior public contracts, and who have paid state and county taxes within the state for not less than two successive years immediately prior to submitting a bid on a plant and equipment such as is ordinarily required for performance of the contract for which the bid is submitted, or on other real or personal property in the state equivalent in value to such plant, *shall be deemed a better bid* than the bid of a competing contractor who has not paid such taxes, whenever the bid of the competing contractor is less than five per cent lower, and the contractor making a bid, as provided by this section, which is deemed the better bid,

*shall be awarded the contract."* (Emphasis added).

■ It is clear that A.R.S. § 34–241 is applicable only to a public contract which is "to be paid for from public funds." Because the project in question is to be financed by water revenue bonds and are not general obligation bonds of the City, the appellants contend that the project is not to be paid for from "public funds", and therefore A.R.S. § 34–241 is inapplicable. In support of this contention, the appellants cite this Court's decision in Cyr & Evans Contracting Co. v. Graham, 2 Ariz. App. 196, 407 P.2d 385 (1965), in which the Court found that revenues derived from special assessments against certain benefitted property owners were not "public funds" within the meaning of A.R.S. § 34–241. We feel that because of the unique circumstances of that case, that decision is dispositive only of that case, and is not controlling in the case *sub judice.*

Cyr & Evans, supra, was a situation where the project in question was a street paving contract which was financed by the formation of an improvement district. The real property owners located within the district, whose property was specially benefitted by the street paving project, were assessed the monies by the City of Phoenix to pay for the project. The bonds issued by the City were payable "only out of the special fund to be collected from special assessments imposed on the lots or parcels of land fronting on or benefitted by said improvements." Because the funds involved were merely held "in trust" by the City of Phoenix for the "equitably" benefitted parties, and because of the improvement district's assessment procedure wherein only the constituents of the improvement district could have voted, this Court resolved that the proceeds should not be characterized as "public funds."

■ Here, the project was to be financed by issuing revenue bonds. Said bonds may be issued pursuant to Article 3, Chapter 5, Title 9, Arizona Revised Statutes. Before these bonds may be issued, they must be submitted to the qualified voters in the political subdivision, in this case, the City of Phoenix. *See,* 3 A.R.S. § 9–523, as amended 1970. In addition, the bonds, once issued, will be paid for out of monies received by the City from every Phoenix resident who pays a water bill. We find the case of Schrey v. Allison Steel Mfg. Co., supra, more analogous to the case now before this Court than is Cyr & Evans Construction Co. v. Graham, supra. In Schrey, the project there was to be financed by the issuance of general obligation bonds of the City of Glendale, which would be paid for by real property and sales taxes collected by the City of Glendale. While the bonds in the instant case would be paid for solely from water revenues received and not from taxes received, we find the same general factors in Schrey applicable here, i.e., the bonds in either case were submitted to a vote of the electors of the City involved, and in both instances the bonds were to be paid for by almost all the inhabitants of the City. We do not believe that the meaning of "public funds" should be necessarily limited to tax monies. Under the facts of this case, where a general election was required for issuance of the bonds, where the contributors were not limited to a small fraction of a political subdivision, nor was a specially benefitted class created, where the political subdivision played an integral part in the method and procedure of acquiring and using the funds, and where the general public will provide the revenues to pay off the bonds, said revenues received are "public funds" within the purview of A.R.S. § 34–241.

Our Supreme Court has apparently reached the same result as this Court in the recent case of City of Phoenix v. Superior Court In and For County of Maricopa, supra, wherein the Supreme court in an order filed January 31, 1973, affirmed the Maricopa County Superior Court's findings that funds generated to finance water revenue bonds are "public funds", and that A.R.S. § 34–241 was therefore applicable. The financing of a

public project by water revenue bonds issued by a public body pursuant to a public election are paid for by "public funds" within the meaning of the tax preference statute.

■ Having determined the applicability of A.R.S. § 34–241 to the facts of this case, we next discuss the extent of discretionary powers enjoyed by the City in awarding a public contract, in conjunction with an examination of whether the City has acted arbitrarily or capriciously in awarding a contract in this specific case.

The position of the City and Bryant in this latter context is essentially that the actions of the City Council are discretionary throughout the course of events and are not subject to being controlled by mandamus actions, absent a clear showing of abuse of discretion. They base their argument upon the provisions of A.R.S. § 34–201 and the Charter of the City of Phoenix. The Charter of the City of Phoenix, as amended, provides:

"Chapter 19, Sec. 3.

". . . The manager may, with the consent of the council, let the contract to the lowest responsible bidder, may reject any and all bids, and may readvertise for bids, or provide for the public works to be done under his direction and supervision. . . ."

A.R.S. § 34–201 provides in relevant part:

"§ 34–201. Notice to contractors of intention to receive bids and enter contract; procedure for submission, acceptance or rejection of bids; doing work without advertising for bids

"A. Every agent shall, . . . publish a notice to contractors of intention to receive bids . . ., and stating:

\* \* \* \* \* \*

"4. That the right is reserved to reject any or all proposals or to withhold the award for any reason the agent determines."

The appellants argue that the above sections must be construed in *pari materia* with § 34–241, and the latter should not be construed as limiting the "agent's" discretion.

■ Initially, it is true that the City Charter and A.R.S. § 34–201 give the City of Phoenix the right to reject any or all bids, provided it does not act arbitrarily or capriciously. If the City had determined to reject *all bids*, neither party could complain. Likewise, if the City initially determined that the contract should go to the "lowest bidder", that, too, would be within its discretion. Appellee's position is that once the City determines to award a contract to someone, such as "the lowest bidder", the City has completed the exercise of its discretion and it must then award the contract to the "lowest bidder." Given the fact the bidders are qualified, the City does not retain the discretionary power to determine who is the "lowest bidder." It is a question of pure mathematics, the appellee argues.

Both the statutory language and pertinent case law in Arizona are in accord with appellee's position. Specifically, in Brown v. City of Phoenix, supra, the Arizona Supreme Court resolved that once the City of Phoenix determined that it was going to accept a bid, the powers and duties of the City thereupon became characterized as merely "ministerial." Further, by the mandatory language of A.R.S. § 34–241, a bid by a qualified bidder meeting the prerequisites of the preference statute "is deemed the better bid" and the bidder *"shall* be awarded the contract." Both Brown and Schrey recognize the proposition that failure to perform essentially "ministerial" functions in applying the preference statute will be construed as being "arbitrary and capricious", subject to mandamus relief through a special action proceeding.

■ Appellants briefly argued in their memoranda that the application of the preference statute is unconstitutional as a denial of equal protection of the laws, and results in the creation of a special privilege without a reasonable basis. We dispose of

**6**

this argument by referring to the Supreme Court decision in Schrey v. Allison Steel Mfg. Co., supra, wherein it was resolved that a rational basis existed for the preference statute, and that therefore the statute was not violative of any constitutional provisions.

The appellants also argued that the holding of the Brown case is bad law and should be overruled. Apparently the Supreme Court has had recent opportunity to examine the law in this area in the case of City of Phoenix v. Superior Court in and for County of Maricopa, supra. Therein the Supreme Court affirmed the determination of the Superior Court in taking the matter into its own hands and awarding a contract to a specific low bidder. By this result, the Supreme Court has at least inferentially reaffirmed the holding in Brown.

In summation, a special action before the trial court requesting mandamus relief is proper where the issue is whether the political subdivision has acted arbitrarily or capriciously, and a contractor claiming a preference has standing to seek mandamus relief. Also, a Superior Court has the power to make a specific award of a public contract to a particular contractor. Furthermore, it is our opinion that the tax preference statute is applicable to a project financed from the sale of revenue bonds because the revenues used to redeem the bonds are from "public funds." Finally, where A.R.S. § 34–241 is applicable, as in this case, and a political subdivision of the State makes a determination as to the bids made on a public project, the powers and duties of that subdivision thereafter become purely "ministerial", and it must accept the bid from the contractor proscribed by the mandatory language of A.R.S. § 34–241. Failure to follow the statutory dictates constitutes "arbitrary and capricious" actions on the part of the subdivision.

Since A.R.S. § 34–241 applies in this case, and Wittman is the lowest responsible bidder, once the preference was considered, the action of the City in failing to award the contract to it was arbitrary and capricious. We find the judgment of the trial court is supported by the evidence.

Judgment affirmed.

OGG, and STEVENS, JJ., concur.