OWEN OF GEORGIA, INC., Plaintiff,

v.

SHELBY COUNTY, Roy Nixon, Mayor of Shelby County, and Pidgeon-Thomas Iron Company, Defendants.

No. 77–2428.

United States District Court, W. D. Tennessee, W. D.

Dec. 2, 1977.

---

Frierson M. Graves, Jr., Memphis, Tenn., for plaintiff.

Leo Bearman, Jr., Memphis, Tenn., for the Mayor and the County, defendants.

James W. McDonnell, Jr., Memphis, Tenn., for Pidgeon-Thomas, defendant.

## MEMORANDUM OPINION

WELLFORD, District Judge.

This is an action to have a contract for construction of a Shelby County Justice Center between defendant, Pidgeon-Thomas Iron Company, and defendant, Shelby County, declared void, and/or to award said contract to plaintiff and/or to award it damages. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332 since plaintiff is a Georgia corporation, and all defendants are residents of Tennessee.

Plaintiff and defendant, Pidgeon-Thomas, a Memphis concern, submitted bids to supply structural steel for the Justice Center to be built in downtown Memphis. Bids were solicited by defendant, Shelby County, pursuant to the Shelby County Restructure Act, Chapter 260 [1974] Tenn. Priv. Acts, § 4.03, ¶ 10(6), which provides:

> All open market purchase orders of contracts *shall be awarded to the lowest bidder who is financially responsible,* taking into consideration the qualities of the articles to be supplied, their conformity to specifications, their suitability to the requirements of the County Government, and the delivery terms. *Any and all bids may be rejected for good cause.* (emphasis added)

The bid packages were submitted with a set of instructions which provided, in part:

> The owner reserves the right to select and award a contract on or to reject any 'package' or grouping of 'packages' by any bidder or bidders as the owner may choose regardless by whom bid, how bid, time bid or sequence of so long as any award falls within the valid bid time set out herein.

> Award of contract: The contract will be awarded to the lowest and/or best

qualified responsible bidder in the owner's opinion. The owner reserves the right to accept any of the proposals submitted or to reject all proposals and to waive any irregularities or informalities in any proposal as he deems best to serve his interest.

The owner reserves the right to reject any or all proposals and to waive any informalities.

The bid form submitted by the parties contained the following language:

The undersigned agrees as follows: (1) That he has received, reviewed, and understands the 'advertisement for bids' and 'instructions to bidders' and will abide thereby.

Plaintiff's bid was initially the lowest one submitted on the Amended Plans and Specifications.[1] Defendants (other than Pidgeon-Thomas) set out the following sequence of events in a memorandum to the Court:

The plaintiff submitted the apparent low bid and the defendant, Pidgeon-Thomas, submitted a bid that was approximately $40,000.00 higher than the plaintiff's. Pidgeon-Thomas later reduced its bid to that of the plaintiff. Shelby County Mayor Nixon, assertedly for "good cause" and pursuant to the authority given him in the advertisement for bids and instructions to bidders, decided to award the contract to the defendant, Pidgeon-Thomas. Nixon based his decision upon two grounds. The first was the commitment of Shelby County to encourage local participation in the Criminal Justice Center. The second was the commitment of the County and his administration to further minority participation in the construction of the Shelby County Criminal Justice Center. A form on minority participation, which was required by the County to be submitted by all bidders, reflected that Pidgeon-Thomas had a higher percentage of minority employment than did the plaintiff, Owen of Georgia, Inc.

The Shelby County Quarterly Court, on May 16, 1977, passed a resolution approving the award of contracts for the construction of the Shelby County Criminal Justice Center. Among the contractors approved was defendant, Pidgeon-Thomas Iron Company. The amount of the contract approved for Pidgeon-Thomas was precisely the amount of the bid submitted by the plaintiff. On June 23, 1977, the Shelby County Quarterly Court reviewed its position as a result of a motion to substitute the plaintiff for Pidgeon-Thomas.

Mayor Nixon stated in an affidavit, in part:

"Pidgeon-Thomas Iron Company and its officials were extremely helpful to Shelby County and to Mr. Shappley [the architect] in making suggestions on numerous ways to reduce the cost of bid package 0500.

"For the two reasons which I considered to be extremely important for the well-being of Shelby County and for the compliance with the policies set by the Shelby County Restructure Act, the Shelby County Mayor and the Shelby County Quarterly Court concerning affirmative action of minority employment, I recommended to the Shelby County Quarterly Court that the defendant, Pidgeon-Thomas Iron Company, be awarded the contract for package 0500.

"Prior to the approval of this contract by the Shelby County Quarterly Court, Pidgeon-Thomas Iron Company voluntarily agreed to reduce its bid referred to above to a figure exactly identical to the figure of the Owen of Georgia, Inc. bid.

"On May 16, 1977, a resolution approving the award of contracts for the construction of a Shelby County Criminal Justice Center was approved by the Shelby County Quarterly Court and among those contracts approved was that of Pidgeon-Thomas Iron Company in the amount of $2,517,402.00.

---

1. Originally defendant, Pidgeon-Thomas's bid was low, but all bids were rejected by Shelby County as being too high.

"Because Owen of Georgia, Inc. objected to my decisions made in this matter, the issue was resubmitted to the Shelby County Quarterly Court on June 23, 1977, and at that time a Motion to Substitute the Plaintiff, Owen of Georgia, for the Defendant, Pidgeon-Thomas Iron Company, as the contracting party for bid package 0500 was defeated.

"Since the Shelby County Quarterly Court specifically reviewed its position in this matter and specifically rejected the position of Owen of Georgia, Inc. and reaffirmed the award of the contract to Pidgeon-Thomas Iron Company and since I agreed as County Mayor with these decisions, I felt it was my obligation to and did in fact execute a contract with Pidgeon-Thomas Iron Company pursuant to the award of that contract by the Shelby County Quarterly Court."

Plaintiff alleges that it was not apprised of any bid rejection, and that it first learned of the award of the contract by virtue of the resolution of the County Court of May 16, 1977, authorizing the Mayor to award the contracts. It stated its objections to the procedures involved and was afforded an opportunity to be heard at a subsequent County Court meeting, but the Mayor renewed his recommendation at this subsequent meeting of the County Court on June 23, 1977. The County Court then affirmed its authorization to award the contract to defendant, Pidgeon-Thomas, after hearing from the parties.

Pidgeon-Thomas has filed a motion to dismiss for failure of plaintiff to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6), alleging that plaintiff lacks standing to sue under Chap. 260 [1974], Tenn. Priv. Acts. Plaintiff has filed a motion for summary judgment (or partial summary judgment, the only issue being the amount of damages), seeking that the Court award the contract to plaintiff. Alternatively, plaintiff seeks to enjoin pay-

ment to defendant, Pidgeon-Thomas, under the contract and to declare it void because the charter terms dealing with competitive bids were not followed by the County and its Mayor.

Other defendants have also moved for summary judgment alleging that, due to its lack of standing, plaintiff has not stated or established a cause of action.

## STANDING TO SUE FOR INJUNCTION OR DAMAGES:

The first defense raised by defendants in this case relates to the question of standing on the part of plaintiff, a non-resident, to challenge the award of the contract to defendant, Pidgeon-Thomas, and to seek an award to itself. If plaintiff has no standing, it may have no right to demand that the contract between Shelby County and Pidgeon-Thomas be set aside or that it be entitled to an award instead. None of the parties has cited a Tennessee case squarely on the point on this issue. Plaintiff, however, in support of its right to bring and to prosecute such a proceeding, cites *Johnson City v. Carnegie Realty Co.,* 166 Tenn. 655, 64 S.W.2d 507 (1933). That case involved a suit by a municipality to enforce special assessments against abutting property owners in connection with the paving of a street. The Tennessee Supreme Court held the procedures followed in awarding the contract were illegal, thereby rendering the contract invalid and unenforceable as a basis for the City's action. That case involved a decision about the legality of bidding and other procedures; it did not, however, involve a situation wherein a disgruntled and unsuccessful bidder sought to set aside a contract.[2]

There is a conflict of authorities dealing with this problem. Plaintiff relies principally upon state cases from New Jersey, New York, California, Nebraska, Wyoming, Ohio,[3] and Montana. These cases generally

---

**2.** *Johnson City v. Carnegie Realty Co., supra,* has never been cited as authority on the proposition of standing.

**3.** The Ohio case cited, *State ex rel. Fisher v. Linzell,* 101 Ohio App. 219, 137 N.E.2d 427 (1955) may not, however, be a basis for plain-

pertain to particular charter or statutory provisions dealing with existence or lack of a right to reject or select bids on the part of a public authority. In some fashion or another, the courts in these cases have justified actions to upset a contractual award. In granting relief in these cases, the courts have founded it on the desirability of obtaining the lowest price for the public and to insure open and honest bidding practices and procedures.

Decisions cited by the defendant reaching a contrary result also cite the first reason given—savings to the public—but reason that competitive bidding procedures are designed to benefit and protect the taxpaying public rather than a particular bidder, and that such laws do not give standing to an unsuccessful bidder to challenge an award absent fraud or extravagance or completely arbitrary action. These decisions include federal cases which discuss the subject of standing such as *Colorado Paving Co. v. Murphy,* 78 F. 28 (8th Cir. 1897), & *Malan Const. Co. v. Bd. of County Commissioners,* 187 F.Supp. 937 (E.D.Mich.1960)[4] and *U. S. Wood Preserving Co. v. Sundmaker,* 186 F. 678 (6th Cir. 1911). See also *Rugo, Inc. v. Henson,* 148 Conn. 430, 171 A.2d 409 (1961); *Fetters v. Mayor and Council of Wilmington,* 31 Del.Ch. 338, 73 A.2d 644 (1950); *Bancamerica-Blair Corp. v. State Highway Commission,* 265 Ky. 100, 95 S.W.2d 1068 (1936); *A & A Construction Co. v. City of Corpus Christi,* 527 S.W.2d 833 (Tex.Civ. App.1975); *Holt & Co. v. Wheeler County,* 235 S.W. 226 (Tex.Ct.App.1921); *Pioneer Co. v. Hutchison,* 220 S.E.2d 894 (W.Va. 1975).

The circumstances in this case do not evidence fraud or extravagance on the part of the defendant county officials, particularly since the ultimate award was made on the basis of the low bid on this project. Shelby County taxpayers are not being

called upon to pay out more than the low bid amount on the Justice Center.[5] The defendants may have been mistaken in their action, but there is no proof to indicate a want of good faith or malfeasance or deceitful conduct akin to fraud. If the charter provision in question were equivalent to a "lowest and best bid" law or ordinance, defendants acted not only with appropriate motive, but also with a fairly wide latitude and discretion granted public officials in these circumstances. Plaintiff's counsel has conceded, replying to defendants' motion to dismiss, that defendant would have discretion in such an instance provided the action were not clearly arbitrary or capricious. See 10 McQuillin, *Municipal Corporations,* § 29.77 (3d ed. 1966).

Where, as in this instance, there has been a reservation of the right to reject all bids, a bidder on a public contract proposal is vested with no legal right to an acceptance of his bid even if it were the lowest bid. Plaintiff has no contractual standing, therefore, as the low bidder to insist that a contract be enforced with defendant, Shelby County. 1A J. Antieau, *Municipal Corporation Law,* § 10.44 (1974 and 1977 Supp.). There may be implied discretion to determine the lowest responsible bidder, even where there is no specific reservation of a right to reject any or all bids. 10 McQuillin, *supra,* § 29.73; 64 Am. Jur.2d *Public Works and Contracts,* § 81 (1972). See *Pearlman v. Pittsburgh,* 304 Pa. 24, 155 A. 118 (1931). There is a policy of liberally construing municipal powers under a grant of authority dealing with bid procedures, and courts are generally reluctant to interfere on behalf of a dissatisfied bidder in such matters absent conduct clearly shown to be arbitrary, capricious or fraudulent, or action beyond any statutory authority or grant of discretion. *Bd. of*

---

tiff's position in light of *Shaw-Henderson, Inc. v. Schneider,* 335 F.Supp. 1203 (W.D.Mich. 1971).

**4.** Cited with approval as constituting the law in Michigan by Judge Engel (now a Judge of the Sixth Circuit) in *Shaw Henderson, Inc. v. Schneider, supra.*

**5.** Indeed, a very substantial reduction was affected for the benefit of taxpayers from the first bids taken, which were rejected, and the defendant, Pidgeon-Thomas, participated in bringing about recommended savings.

*Education v. Allender,* 206 Md. 466, 112 A.2d 455 (1955), *Weber v. City of Philadelphia,* 437 Pa. 179, 262 A.2d 297, 299 (1970), J. Antieau, *supra,* § 10.43; 64 Am.Jur.2d, *supra,* §§ 75, 76. The Shelby County Restructure Act Chap. 260 [1974] Tenn. Priv. Acts, § 1.01, provides:

> "It is the intent of this chapter that the limitations on the powers of the County government shall be strictly construed; and that grants of power to county government shall be liberally construed."

Recognizing a split of authority on the standing issue and the unusual circumstances here which indicate not only an absence of fraud, but also no waste of taxpayers' funds or bad faith the Court believes that the Tennessee courts would find that plaintiff here lacks standing to compel the action sought. See Wright, *Law of Federal Courts,* § 58 (3d ed. 1976). "The lowest bidder is not ordinarily entitled to mandamus to compel the local government to enter into a contract with him. There is no legal right to compel acceptance of his bid, say the courts, where the local government has the right to reject all bids . . . the lowest bidder cannot ordinarily enjoin the local government from entering into a contract with another." Antieau, *supra,* § 10.44.[6]

Plaintiff, accordingly, is held not entitled to an injunction awarding it a contract with the County based upon its bid in controversy. See *Housing Authority of Opelousas v. Pittman Const. Co.,* 264 F.2d 695, 704 (5th Cir. 1959). Neither is plaintiff entitled to damages or lost profits against the County under the circumstances. *Housing Authority of Opelousas v. Pittman Const. Co., supra; Antieau, supra,* § 10.44; 63 C.J.S. *Municipal Corporations* § 1157.

**DECLARATORY RELIEF:**

Although plaintiff has no standing to seek a bid award or damages under the circumstances shown, it has also sought declaratory relief that the contract award made was invalid and improper under the Shelby County Restructure Act § 4.03 ¶ 10(6). This particular section has not been construed by a state court. Defendant contends that the last sentence gives it a discretionary right to reject the low bid of a financially responsible bidder "for good cause," which it construes to mean a right to favor a local bidder and/or a bidder who employs a higher proportion of minority employees.[7] Plaintiff, on the other hand, asserts that this section is one mandating that the County award such a contract to the "lowest bidder who is financially responsible."

Plaintiff has sought such relief as to come within the meaning of both Tennessee and federal declaratory relief statutes[8] in that it seeks a declaration that the contract awarded Pidgeon-Thomas by Shelby County is illegal and void. The Declaratory Judgment Act of the United States merely makes an equitable remedy available; it does not confer jurisdiction if it does not otherwise exist. 10 Wright & Miller, *Federal Practice & Procedure,* § 2755. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) makes state law applicable where only declaratory relief is at issue in a diversity suit. Wright & Miller, *supra,* § 2756. An actual controversy here exists—one ripe for judicial determination, not a mere hypothetical or abstract dispute.

Furthermore, plaintiff does have a real and substantial interest in the controversy as to the correct interpretation of state law, the Shelby County Restructure Act, as it pertains to the bid procedure here involved.

---

**6.** This authority recognizes a modern trend away from this general principle, especially with regard to the municipal authorities being required to grant the dissatisfied bidder a hearing.

**7.** A Shelby County Quarterly Court resolution dated June 17, 1977, refers to a prior resolution "for maximum effort to employ minority con-

tractors" and that a special committee be formed "to meet with contractors who had been or will be awarded contracts for this project in order to encourage them to make every effort possible to employ minority subcontractors and employees."

**8.** T.C.A. § 23–101 *et seq.;* 28 U.S.C. § 2201.

Despite the conclusion that plaintiff has no standing to force the County to accept its bid and/or to render it damages, the Court holds that the interest of plaintiff is sufficient to make it appropriate to adjudge and declare the issues relating to the validity of the Shelby County—Pidgeon-Thomas contract. *City of Phoenix v. Wittman Contracting Co.,* 20 Ariz.App. 1, 509 P.2d 1038 (1973); *Aqua-Tech v. Como Lake P&R Dist.,* 71 Wis.2d 541, 239 N.W.2d 25 (1976).

■ Absent the clause, "any or all bids may be rejected *for good cause,*" the Court would have no problem interpreting this provision to relate to and to amplify the requirement that contracts of this type "shall be awarded to the lowest bidder who is financially responsible." Where there is ambiguity or doubt as to meaning, the Court should attempt to resolve it using reason to reconcile any possible inconsistency. To adopt the position asserted by defendants would be to read out the mandatory nature of the language above quoted that the lowest financially responsible bidder *shall* be awarded a contract under the detailed and prescribed procedures set out in Chapter 260 of the 1974 Private Act. If the Tennessee legislature intended that the Shelby County Mayor or Quarterly Court could select and choose among competing bidders merely on any basis deemed by him or it as a "good cause," further undefined, what reason was there to be very specific that contracts be awarded to the lowest bidder who is financially responsible, also "taking into consideration the qualities of the articles to be supplied, their conformity to specifications, their suitability to the requirements of the County government, and delivery terms?" The only reasonable conclusion this Court can reach is that "good cause" refers to these particular reasons or circumstances that have been delineated before in the Act that do constitute a sufficient basis for rejection of an otherwise low bid. These "good cause" grounds for rejection under 10(6), properly interpreted, include:

    a. A bidder who is not "financially responsible",

    b. a bidder who offers to furnish inferior quality merchandise or material,

    c. a bidder whose proposal is not in conformity to specifications,

    d. a bidder who offers supplies or articles that are "not suitable to the requirements," and

    e. a bidder whose delivery terms are objectively inferior or substantially less desirable than another acceptable bidder.

This interpretation of the charter provisions in question recognizes the traditional and usual grounds, within the reasonable discretion of County officials, of rejecting bids when they are required to contract with the lowest responsible bidder. There is nothing inconsistent with coupling this kind of discretion with authority to reject any or all bids. As was stated by an Arizona court in *Brown v. City of Phoenix,* 77 Ariz. 368, 272 P.2d 358 (1954):

". . . where the charter provides that such leases shall be made at public auction, to the highest responsible bidder, and then grants to the council the discretion 'to reject any and all bids.' It seems to be the position of the defendants that the magic words in quotes, supra, justify the action taken by defendants, . . . We disagree. The undoubted purpose of the law is to be benefit the taxpayers and citizens of the city by regulating the manner in which disposition may be made of city property, . . . The purpose of requiring competitive bidding is 'to prevent the plundering of the taxpayers' and as between two bidders equally responsible the municipality cannot reject the lower bid. *Osborn v. Mitten,* 39 Ariz. 372, 6 P.2d 902. . . . The cases agree that the power to grant the contract to the highest (or, in the ordinary situation, the lowest) *responsible* bidder, implies an exercise of discretion in determining responsibility, for that word embraces such elements as the bidder's integrity, skill, capacity, experience, and facilities for doing the word (sic) he is contracting to perform. *Osborn v. Mitten, supra; McQuillin, Municipal Corpora-*

*tions,* Vol. 10, Secs. 29.72, 29.73. Likewise, the power to reject any or all bids is a further grant of discretionary power. Of this power, *McQuillin, Municipal Corporations,* Vol. 10, Sec. 29.77 says:

'In exercising the power to reject any or all bids, and proceeding anew with the awarding of the contract, the officers cannot act arbitrarily or capriciously, but must observe good faith and accord to all bidders just consideration, thus avoiding favoritism, abuse of discretion, or corruption. Although the courts generally will not disturb an honest exercise of discretion, it has been said that they will intervene to prevent the arbitrary rejection of a bid when its effect is to defeat the object to be attained by competition.'" 77 Ariz. at 372, 272 P.2d at 361–62.

Antieau, *supra,* § 10.43, cites with approval language approved many years ago in California and Minnesota cases describing the characteristics of a low and responsible bid:

"The term 'lowest responsible bidder' has been held to mean the lowest bidder whose offer best responds in quality, fitness and capacity to the particular requirements of the proposed work, and that where, by the use of these terms, the council has been invested with discretionary power as to which is the lowest responsible bidder, having regard to the quality and adaptability of the material or article to the particular requirements of its use, such discretion will not be interfered with by the courts, in the absence of direct averments and proof of fraud.'

"Accordingly, a local government may reject the lowest bid and purchase from a higher bidder, so long as the decision is reasonable and the choice based upon some substantial difference in quality or adaptability. . . .

"Not only the character of the article, or goods being offered can be considered, but also the character and qualifications of the bidder. In determining who is the lowest responsible bidder, the awarding body can consider financial ability, skill, integrity, judgment, experience, reputation, previous conduct on similar contracts, as well as any other factor reasonably relevant to a bidder's successful performance of his contract.

\*　　\*　　\*　　\*　　\*　　\*

". . . . . In setting aside local government action rejecting the lowest bid and awarding the contract to another bidder, a New Jersey court has said:

'A finding that one is not a responsible bidder must be based upon a finding by the majority of the members of the governing body that the bidder was so lacking in the experience, financial ability, machinery and facilities necessary to perform the contract as to justify a belief upon the part of fair-minded and reasonable men that (he) would not be able to perform (his) contract. And, to reject the bid of the lowest bidder there must be such evidence of the irresponsibility of the bidder as would cause fair-minded and reasonable men to believe that it was not for the best interest of the municipality to award the contract to the lowest bidder.'

Recent cases are manifesting a greater judicial willingness to review the local government failure to award contracts to the low bidder on the ground that he is not responsible. . . ."

Thus, the interpretation here given, as contended by plaintiff, is in accord with reasonable construction and the general law on what proper factors may be taken into account by county or municipal authorities in determining a lowest responsible bidder. The addition in the Act of the description "lowest bidder who is *financially* responsible" (emphasis added) includes another factor of financial integrity and capability commonly considered, and properly considered, in awarding a bid under this general type of legislation.

At the June 23, 1977, hearing before the Shelby County Quarterly Court, the County Attorney stated, in response to a question: "There is no question here that both Owens of Georgia and Pidgeon-Thomas are finan-

cially responsible. Taking into consideration the qualities of the articles to be supplied, there is no consideration in this dispute that the qualities of the articles to be supplied by both Mr. Pidgeon and Mr. Owens conform to the specifications . . . and the delivery terms are the same." Defendants do not make any present assertion to the contrary but rely on the reasons given by Mayor Nixon that Pidgeon-Thomas was a local contractor and had a 30% minority ratio of employees to 13% for plaintiff. In this regard, the language of the charter, "their suitability to the requirements of the County government" refers directly to "qualities of the articles to be supplied" under the contract. This clause cannot reasonably be interpreted to mean "bidders," so as to give the County government a broad and general discretion to choose which bidders are "suitable" to the County.

Neither can the invitation for bids on this project expand or enlarge the discretion given Shelby County officials under the charter with regard to requirements to be followed in dealing with contracts, particularly as to lowest financially responsible bidders, and competitive bids. *Cf. Marshall & Bruce Co. v. City of Nashville,* 109 Tenn. 495, 71 S.W. 815 (1902).

This Court is not indicating that the motives of defendants here were not basically well-meaning, nor that the reasons given for rejecting plaintiff's bid are not good reasons. Courts have upheld statutory authority favoring local contractors and official regulations or guidelines favoring affirmative action.[9] What the Court holds is that the reasonable interpretation of the charter provisions controlling the handling of competitive bids in Shelby County is to require the awarding of a contract to the lowest bidder who is financially responsible. The Act gives specific direction about the factors to be taken into account in determining responsibility and that the bidder must also be financially responsible. The Court holds that this legislation does not include authority to make other extraneous and unrelated "good cause" determinations in picking and choosing between bidders. The discretion under the law involved is limited to consideration of financial ability and responsibility relating to quality and character of performance as specified therein.

The decision reached by the Court has been made reluctantly, because the Court knows that work is already well underway on a needed Justice Center in this County. The equities should favor defendant, Pidgeon-Thomas, which has acted in reliance on actions taken by the highest officials in the County as advised by their attorney. Yet, even reluctantly, the Court for the reasons stated, feels compelled to declare the contract in question awarded Pidgeon-Thomas by the other defendants to be invalid and voidable because it has not been awarded in conformity with the competitive bidding procedures required under the Shelby County Restructure Act.

The Court declines to rule, and it is not appropriate for the Court to rule, on any claim, whether by reason of quantum meruit or otherwise, that Pidgeon-Thomas may have to which it may be entitled for work and services performed in good faith for Shelby County on this project.

---

**9.** See, for example, *Dalton v. Kunde,* 31 Ohio Misc. 75, 286 N.E.2d 483 (1972), and *Weiner v.* *Cuyahoga Community College,* 19 Ohio St.2d 35, 249 N.E.2d 907 (1969).