■ In the Matter of LONG ISLAND LIGHTING COMPANY, Petitioner, v. INDUSTRIAL COMMISSIONER OF NEW YORK STATE, Respondent. — Proceeding pursuant to article 78 of the CPLR to annul respondent's determination, dated January 31, 1972, which directed the payment of the prevailing wage to petitioner's employees engaged in the performance of contracts with the Town of Islip for the installation of street light standards. Determination annulled, without costs, and matter remanded to respondent for a further

hearing in accordance with the views herein set forth. In October and November, 1969 petitioner, a public utility, entered into contracts with the Town of Islip for the installation of 48 street light standards at an annual cost of $102.65 per standard. The contracts provided that the town might at its option purchase the standards in place at their original cost, less depreciation; and they further provided that if the town were to terminate the use of the standards, it would pay to petitioner the original installed cost, plus the cost of removal, less depreciation and salvage value. Respondent after a hearing determined that the contracts were subject to section 220 of the Labor Law, which requires that laborers on public works shall be paid the prevailing rate of wage in the same trade. We agree with this determination, but think that petitioner was unfairly deprived of its rights of due process during the hearing. A further hearing is therefore directed, at which peitioner shall be afforded information deleted from exhibits received into evidence by the hearing officer. Section 220 of the Labor Law must be accorded a liberal construction (*Bucci* v. *Village of Port Chester,* 22 N Y 2d 195, 201; *Matter of Smith* v. *Joseph,* 275 App. Div. 201, affd. 300 N. Y. 516). It requires, in each contract to which a municipal corporation is a party, a stipulation that laborers employed by the contractor on the public work shall be paid the prevailing wage (Labor Law, § 220, subd. 3). A town is authorized to erect street lights as a municipal function (Town Law, § 198, subd. 6). The contracts with petitioner had undoubtedly for their purpose the construction of fixtures for a public object. In this sense they carried out public work, for it is function which marks the public nature of the contracts (cf. *Matter of Miele* v. *Joseph,* 280 App. Div. 408, 409, affd. 305 N. Y. 667). Petitioner argues that the contracts were service contracts, not public work contracts, in that they were primarily designed to provide illumination, since the standards remained the property of petitioner. But this disregards the provisions of the contracts which allow the purchase of the standards at cost, less depreciation, at any time by the town and require the town to reimburse petitioner, in effect, for its outlay according to a formula, in the event the use of the standards were discontinued. The combined force of these provisions attenuate any claim that the purpose of the contracts was only lighting service rather than the erection of a public structure. Indeed, by these terms the command of the statute could effectively be thwarted, as the town could exercise its purchase option immediately after the installation was completed. What petitioner did under the contracts was work which might have been performed by private contractors. It was not work only and customarily performed by utilities. When, therefore, petitioner engaged in that work for the town it was subject to the same provisions of the Labor Law applicable to private contractors. Petitioner wins no exemption from the law because of its status as a public utility (cf. Labor Law, § 230, subd. 2). We think it was within the competence of respondent to determine whether petitioner's employees were performing work in the field surveyed by him and to find the classifications of the job involved (*Matter of Flannery* v. *Joseph,* 300 N. Y. 149, 154). On the other hand, we think petitioner was unfairly hampered at the hearing by the admission into evidence of surveys of the prevailing wage structure from which the informants' names and addresses had been deleted. Petitioner was, as a result, unable to inquire into the validity of the data upon which respondent's decision was based. Petitioner, in brief, could not meet the thrust of that anonymous evidence without knowing the source and circumstances of the evidence (cf. *Matter of Heaney* v. *McGoldrich,* 286 N. Y. 38, 45). Accordingly, the determination must be annulled and the matter remitted to

respondent for a further hearing at which petitioner shall be informed of the source of the data within the survey and shall have the opportunity to rebut that evidence. The issue of whether petitioner's employees were engaged in the same trade or occupation as the employees who were surveyed shall also be part of the hearing, as should be the question of all-year-round employment as compared to temporary employment. Hopkins, Acting P. J., Martuscello and Gulotta, JJ., concur; Munder and Christ, JJ., concur in annulling respondent's determination, but otherwise dissent and vote against remanding the matter for a further hearing, with the following memorandum: In our view the labor supplied by the employees of petitioner was not "public work" and thus not subject to the provisions of section 200 of the Labor Law. The labor was expended to supply the Town of Islip with a service, namely, street lighting or illumination (see *Downey* v. *Bender*, 57 App. Div. 310). This is obvious from the language of the contracts between the parties. Pursuant thereto, petitioner, not the town, selected the particular utility poles which were erected; the cost or price was figured on an "annual operating cost" basis; in the event the town terminated "the use of the facilities", it was to pay petitioner the original installment cost, plus the cost of removal, "less the accrued depreciation and salvage value of the equipment removed"; and the town, at its option, could purchase the fixtures in place at their original cost, less petitioner's accrued depreciation. These contract provisions showed that the utility poles and related equipment were to remain the property of petitioner. It is conceivable the town would never exercise its option to purchase these items. Experience shows this generally to be the case. That would leave petitioner with a so-called "public work" on its hands. Realistically speaking, the poles and equipment were simply the vehicle whereby the service purchased by the town was delivered. The Labor Law, even though liberally construed, was never intended to cover such an arrangement. Simply stated, the work was performed *for* the public utility, not the town.