680 P.2d 829

**CENTRAL ARIZONA WATER & DITCHING COMPANY, an Arizona corporation, Plaintiff-Appellant,**

v.

**The CITY OF TEMPE, an Arizona municipal corporation; and The City of Tempe Municipal Property Corporation, an Arizona non-profit corporation, Defendants-Appellees.**

No. 1 CA–CIV 6033.

Court of Appeals of Arizona, Division 1, Department D.

Feb. 21, 1984.

Udall, Shumway, Blackhurst, Allen, Lyons & Davis, P.C. by John H. Lyons, Mesa, for plaintiff-appellant.

David R. Merkel, City Atty. and Vincent A. Iannone, Asst. City Atty., Tempe, for defendant-appellee City of Tempe.

Gust, Rosenfeld, Divelbess & Henderson by John C. Wesley, Phoenix, for defendant-appellee City of Tempe Municipal Property Corp.

## OPINION

JACOBSON, Chief Judge.

The basic dispute presented by this appeal is whether A.R.S. § 34–221(A)(3), which allows a contractor on a public work project to offer substitute security in lieu of retention of a portion of the contract price to assure completion of the contract, applies where the "owner" of the property is a private non-profit corporation, rather than the governmental entity.

This action was commenced by Central Arizona Water & Ditching Company (CAWDCO) against the City of Tempe (City) and the City of Tempe Municipal Property Corporation (Corporation) seeking a declaration that the defendants were required to accept CAWDCO's offer of substitute security in connection with the construction by CAWDCO of a water treatment plant to be utilized by the City. The matter was presented to the trial court upon stipulated facts and the trial court entered judgment denying relief to CAWDCO. CAWDCO has timely appealed.

The stipulated facts reveal that in 1975, the City presented to its voters, and received approval of, a comprehensive bond issue for the proposed construction of several municipal improvements, including the construction of a water treatment plant. In 1979, the City put the construction of the water treatment plant out for bids and CAWDCO's bid was the lowest. However, this bid was approximately 7½ million dollars above the amount of general obligation bonds allocated to this project as a result of the 1975 bond election.

At this juncture the City was faced with either going back to the voters for additional bonding authorization or requesting the services of the Corporation in financing this project. The Corporation was formed in 1968 for the primary purpose of assisting the City in financing various city improvements. It was first utilized to build the Tempe City Hall and subsequently was involved in building a public library, a community center, a municipal golf course and a mechanical refuse collection system.

The Corporation is non-profit, has no shareholders and is operated by a board of directors. At the present time, the Tempe City Attorney is a member of that board. Upon dissolution of the Corporation, all corporate assets after the payment of liabilities will vest in the City without payment of any consideration. It is apparent that the Corporation has no corporate purpose other than to assist the City in the building of city improvements.

The manner in which the Corporation fulfills that purpose is illustrated by the present case. The City, through its staff or through architects hired through bidding, prepares all plans and specifications for the project, invites bids, selects the builder and prepares all contract documents. The City transfers title to the project to the Corporation, which thereby becomes the "owner" of the project and signs all contract documents in that capacity. However, as the contract documents in this case provided, the City remains the Corporation's "agent for all purposes relating to construction, including construction, supervision, change orders, disputes and construction payments. The contractor shall, therefore, deal with the staff of the City of Tempe in the usual manner for City of Tempe projects." Additionally, the notice inviting bids from contractors was signed by the City's director of public works and indicated that bids were to be delivered to the city clerk's office and that copies of the contract documents could be obtained at the city engineer's office. In a similar vein, both Corporation and the City are named as obligees of the statutory payment and statutory performance bonds issued pursuant to A.R.S. § 34–222(A).

In turn, the Corporation privately sells its bonds in an amount sufficient to cover the cost of construction. These bonds are retired under a buy back agreement with the City under which the City's payments to the Corporation equal the Corporation's bonded indebtedness and administration expense. City payments are generated from public revenues other than *ad valorem* taxes. The end result being that at the time that the Corporation bonds are retired, the City has obtained the desired public improvement and the Corporation has neither made nor lost any monies as a result of its involvement in the construction project. In essence, the Corporation acts as a financing vehicle for the construction of the City's public improvements.[1]

Since the construction of the water treatment plant originally started as a city-owned project, the ultimate contract entered into between CAWDCO and the Corporation is exactly the same contract which would have been entered into had the City been the contracting party, except for the designation of the Corporation as "owner" and contract clauses related to that change in designation.

The dispute in this case arises out of the applicability of A.R.S. § 34–221, *et seq.*

---

1. CAWDCO concedes and we agree that there is nothing illegal in this arrangement. *See City of Phoenix v. Phoenix Civic Auditorium & Conven-* *tion Center Association, Inc.,* 100 Ariz. 101, 412 P.2d 43 (1966) (opinion on rehearing).

dealing with the construction of public works. Prior to its amendment, A.R.S. § 34–221(A)(3) provided that as a guaranty of the performance by the contractor of its obligations under the construction contract, the governmental entity was entitled to withhold from its periodic payments on the contract a sum equal to 10% of all monies due under the contract. As a practical matter, the governmental entity was investing these retained funds and benefitting from the interest generated over the life of the construction project.

The legislature amended A.R.S. § 34–221(A)(3) to provide:

A. The agent shall enter into a contract ... the terms of which shall include the following items:

\* \* \* \* \* \*

3. Ten per cent of all estimates shall be retained by the *agent* as a guarantee for complete performance of the contract.... In lieu of the retention provided in this paragraph ... the *agent shall*, at the option of the contractor, accept as a substitute [other securities].... In the event the agent accepts substitute security ... for the ten per cent retention, the contractor shall be entitled to all interest or income earned by such security.... (Emphasis added).

A.R.S. § 34–101 provides:

In this title, unless the context otherwise requires, "agent" means the state or any county, city or town, or officer, board or commission thereof, and irrigation, power, electrical, drainage and flood control districts, tax levying public improvement districts, and county or city improvement districts.

During the course of construction, CAWDCO offered statutorily acceptable substitute securities to the Corporation and the City under this statute. The Corporation refused to accept these securities and this litigation ensued. The parties agree that the amount of interest which would be generated by the retention of 10% of the contract price over the term of the construction project is approximately $200,-000.00. What this lawsuit boils down to is who gets the $200,000.00, the Corporation or the contractor?

The contentions of the parties are straightforward. On the one hand, the Corporation points to the statutory definition of "agent," which it admittedly does not fall within, and argues that under the doctrine of *expressio unius est exclusio alterius*, it cannot be considered an "agent" against whom A.R.S. § 34–221(A)(3) has any application. In addition, it argues that in any event A.R.S. § 34–221(A)(3) is not self executing and since its terms were not incorporated into the written contract entered into with CAWDCO, it is not contractually bound by its provisions.

CAWDCO argues that this job is in fact a public works project, and therefore the legislature, by the enactment of comprehensive legislation dealing with this project, must have intended that A.R.S. § 34–221(A)(3), be applicable to all public works projects, even though the ostensible "owner" is not a governmental entity. Moreover, CAWDCO argues that all the provisions of A.R.S. § 34–221 are incorporated into the contract between the parties, even though not specifically set forth therein.

We start with the proposition that if the Corporation's contention is correct—that it is not an agent within the meaning of A.R.S. § 34–101, then it logically follows that it is not an "agent" for any purposes of Title 34 and the entire act is inapplicable to it. This means that all the safeguards built into the legislation dealing with public works construction concerning bonding requirements for both the general and subcontractors, eligibility of contractors and subcontractors, preference for locally manufactured materials, and criminal sanctions, would be inapplicable to any public works project in which the governmental agency used a private corporation to finance the project. Did the legislature intend this result? We believe not.

It has previously been recognized that the provisions of the Act are applicable to

all contracts for the construction of public buildings and structures and that:

> Since they [laws affecting public works] are based upon public economy and are of great importance to the taxpayers, laws requiring competitive bidding as a condition precedent to letting the public contracts ought not to be frittered away by exceptions but, on the contrary, should receive a construction always which will fully, fairly, and reasonably effectuate and advance their true intent and purpose, and which avoid the likelihood of their being circumvented, evaded, or defeated.

*Secrist v. Diedrich,* 6 Ariz.App. 102, 106, 430 P.2d 448, 452 (1967).

While *Secrist* dealt with only the competitive bidding provisions of the act, in our opinion, the reasoning is equally applicable to A.R.S. § 34–221(A). We have previously outlined in detail the interrelationship of the City and the Corporation, and need not repeat it here. Suffice it to say that the only difference between the City of Tempe building this project and the Corporation being the builder, is in the nature of the financing—corporation bonds are issued rather than city bonds. And, even in this regard, city revenues, (other than *ad valorum* taxes) are pledged to retire these bonds. If the issue before us was whether the. Corporation could let a contract for construction of a city improvement costing $14,000,000 without competitive bidding when the city revenues were pledged to pay for that construction, none of us would hesitate in holding that the character of the financer did not change the basic public work nature of the construction and hold that the competitive bidding provisions of the act were applicable. To do otherwise would "circumvent, evade and defeat" the clear legislative intent that the public policy requirements of the act are applicable to public construction financed with public funds.

We therefore hold that where the sole purpose of using a private corporation to construct a public project is merely a financing vehicle to channel public funds, A.R.S. § 34–221(A)(3) is applicable.

This brings us to the last contention raised by the Corporation, that is, that A.R.S. § 34–221(A)(3) is merely a right bestowed upon a contractor which may be bargained away by failure to include the same within the contract documents.[2] We disagree. The provisions of A.R.S. § 34–221 are mandatory in nature: the terms of the contract "*shall* include the following terms;" the "agent *shall* ... accept" substitute security. Moreover, the City admits that the contract between the Corporation and the contractor contained exactly the same terms that would be included if the City itself were the contracting party, and that in that event, under those same terms the City would have been required to accept substitute security even in the absence of a specific contract provision requiring such acceptance. We hold that all of the provisions of A.R.S. § 34–221(A)(3) are applicable to the contract involved here, and since the City would be bound to accept substitute security, the Corporation is likewise required to accept that security. In essence, we read the mandatory provisions of A.R.S. § 34–221(A)(3) into every public works contract, regardless of whether its provisions were expressly set forth in the contract documents. *See Wise v. First National Bank of Nogales,* 49 Ariz. 146, 65 P.2d 1154 (1937).

For the foregoing reasons, the judgment of the trial court is reversed and the matter remanded with directions to enter judgment in favor of CAWDCO.

KLEINSCHMIDT, P.J., and GREER, J., concur.

---

**2.** The Corporation has also argued that to impose the provisions of A.R.S. § 34–221(A)(3) upon private contracting parties (the corporation as "owner" and the contractor as "builder") is an impermissible limitation on the right to contract. In view of our conclusion that the City may not avoid the provisions of A.R.S. § 34–221(A)(3) by the mere utilization of a private financer, there are no truly "private" parties involved in this contract.