839 P.2d 1093

**ACHEN–GARDNER, INC., an Arizona corporation, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable David L. Roberts, a Judge thereof, Respondent Judge,**

**CITY OF CHANDLER, a municipal corporation, and Jeri–Co Group, Inc., an Arizona corporation, Real Parties in Interest.**

No. CV–90–0404–PR.

Supreme Court of Arizona,
En Banc.

May 21, 1992.

Order Granting in part, Denying in part, Motion for Reconsideration and Amending Opinion July 14, 1992.

Morrison & Hecker by Mark A. Nadeau, David L. Abney, Stephen B. White and Scott T. Forland, Phoenix, for petitioner.

Dennis M. O'Neill, Chandler City Atty., Chandler, for real party in interest City of Chandler.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Larry L. Smith and Jeffrey B. Smith, Phoenix, for real party in interest Jeri–Co Group, Inc.

Snell & Wilmer by Jerril F. Kaplan, James R. Condo, E. Jeffrey Walsh and Nancy A. Stratta, Phoenix, for amicus curiae Associated Gen. Contractors of America–Arizona Bldg. Chapter.

Shelley & Bethea by J. LaMar Shelley, Mesa, for amicus curiae League of Arizona Cities and Towns.

## OPINION

FELDMAN, Chief Justice.

The City of Chandler (Chandler) and Jeri–Co Group, Inc. (Jeri–Co) petition for review of the court of appeals' opinion granting special action relief to Achen–Gardner, Inc. (Achen–Gardner). *Achen–Gardner v. Superior Court,* 167 Ariz. 536, 809 P.2d 961 (Ct.App.1990). We granted review to determine the relationship between Arizona's competitive bidding laws (A.R.S. § 34–101 *et seq.*) and Arizona's development agreement law (A.R.S. § 9–500.-05), an issue of first impression. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5, and Rule 8, Ariz.R.P.Spec. Act., 17B A.R.S.

## FACTS AND PROCEDURAL HISTORY

In June 1989, Chandler and D.W.C. Commercial Properties (D.W.C.) entered into a development agreement (Agreement) pursuant to A.R.S. § 9–500.05, which authorizes municipalities to make agreements with prospective developers regarding various conditions and terms of the development, including "the financing of public infrastructure and subsequent reimbursements over time." A.R.S. § 9–500.-05(F)(1)(g). D.W.C. agreed to develop a retail commercial facility, Sun Tech Center (Sun Tech), and to "cause" certain street improvements made necessary by Sun Tech's development "to be performed." [1] Pursuant to the Agreement, Chandler was to reimburse D.W.C. for the cost of these off-site street improvements from the sales taxes collected from Sun Tech's retail tenants. The contract requires Chandler to pay D.W.C. eighty percent of all sales tax-

---

1. The off-site improvements at issue are described in the Agreement as follows:

   (a) Construction of an additional thru-lane on Alma School Road with deceleration lanes at the driveways from Warner Road to Mariposa Road. The construction shall include all demolition, grading, paving, curbs and gutters, sidewalks, street lights, street signage, traffic control devices, drainage facilities, utility undergrounding, and landscaping within the right-of-way, in accordance with the City's design standards. City will be responsible for maintaining all such improvements upon acceptance except for the landscaping which shall be maintained by Developer. Developer agrees to dedicate the necessary right-of-way across the Property at no cost to the City to accommodate the improvements.

   (b) Installation of traffic signals at the intersection of Alma School and the Property's southern most driveway which is north of Warner and at Warner Road and Evergreen Street. City will be responsible for maintenance of the traffic signals.

   (c) Right-of-way landscaping along Mariposa, Evergreen, El Monte, and Alma School Road and that portion of Warner east of Evergreen.

   (d) Reconfiguration and reconstruction of a new cul-de-sac bubble at the intersection of Mariposa Street and El Monte Drive at the point of abandonment of Mariposa east.

   (e) Construction of a deceleration lane on Warner Road at Evergreen Street.

   (f) Construction of street lights on Warner Road in accordance with City street light standards.

   (g) Construction of a raised median in Warner Road from its current eastern termination point to a point approximately 300 feet east of Evergreen Street.

   (h) Reasonable architectural, engineering and landscape architect services necessary to perform items (a) through (g) of this Section 2.1.

es resulting from the "(i) operation of any Wal–Mart store ... and (ii) operation of any retail stores which are located upon the Property and have a size of at least 20,000 square feet of gross leasable area." Chandler's obligation to make payments was to cease upon full reimbursement but, in any event, no later than December 31, 1992.

The Agreement further provided that D.W.C. was to award the contract for the off-site improvements "to [the] lowest reasonable bidder; if for some reason Developer rejects bid, then Developer pays the difference between lowest bid and bid selected." Chandler's reimbursement obligation was thus limited to the amount of the lowest reasonable bid whether or not that bid was accepted. D.W.C. subsequently assigned its interest in the Agreement to Jeri–Co and is not a party to this action.

In November 1989, Achen–Gardner received a "Notice of Call for Bids," on City of Chandler letterhead, requiring that bids for performing the off-site improvements be submitted to the Chandler purchasing office no later than December 18, 1989. A representative of Achen–Gardner attended a pre-bid conference at the Chandler purchasing office, and Achen–Gardner later submitted a timely bid. When the bids were opened, Achen–Gardner's bid of $394,553.87 was approximately $31,000 lower than the only other bid. Chandler's engineer recommended to Jeri–Co that it award the contract to Achen–Gardner, and Chandler informed Jeri–Co that, pursuant to the Agreement, Jeri–Co would be reimbursed for the off-site improvements only up to the $394,553.87 bid by Achen–Gardner, regardless of who ultimately performed the work.

Jeri–Co refused to award the contract to Achen–Gardner and eventually decided to perform the work itself. After several attempts to obtain the contract, Achen–Gardner brought a special action in superior court seeking an order enjoining the actions of Chandler and Jeri–Co and awarding the contract to Achen–Gardner. The superior court denied Achen–Gardner relief, explaining that "[n]o reason has been shown as to why the developer must comply with the competitive bidding statute in awarding the contract." The court stated that "the City and the public are protected by the bidding procedures used because reimbursement is limited to the amount of the low bid." Minute Entry, April 13, 1990, at 2.

Achen–Gardner then filed a petition for special action in the court of appeals, which accepted jurisdiction and reversed the decision of the superior court. The court of appeals held that the off-site improvements were "structures," and therefore the project was subject to Arizona's competitive bidding laws. Achen–Gardner, 167 Ariz. at 539–44, 809 P.2d at 964–69. The court enjoined Chandler from reimbursing Jeri–Co for the off-site improvements unless Jeri–Co complied with the competitive bidding law. The court also awarded Achen–Gardner its costs and attorneys' fees. Id. at 545, 809 P.2d at 970.

Chandler and Jeri–Co petitioned this court to review the court of appeals' opinion. We granted review to resolve the following issues:

1. Whether the off-site improvements in question are "structures" for the purpose of Arizona's competitive bidding laws, A.R.S. § 34–101 et seq.;

2. Whether the off-site improvements are part of the private development or are a public street improvement undertaken by Chandler and thereby subject to the competitive bidding requirements of A.R.S. § 34–201;

3. Whether the court of appeals, in holding that the requirements of Title 34 apply to development agreements entered into pursuant to A.R.S. § 9–500.05, misinterpreted and improperly applied the public policy underlying competitive bidding statutes.

## DISCUSSION

A. The Off–Site Improvements Are "Structures" Subject to the Competitive Bidding Laws

■ Competitive bidding is required only when mandated by statute. Hertz Drive–Ur–Self Sys. v. Tucson Airport Auth., 81

Ariz. 80, 84, 299 P.2d 1071, 1075 (1956); 10 Eugene McQuillin, LAW OF MUNICIPAL CORPORATIONS § 29.31 (3rd ed. 1990) (hereinafter *McQuillin*). Whether competitive bidding is required thus depends on the "proper construction of the applicable law." 10 *McQuillin* § 29.32.

Arizona's competitive bidding statutes provide, with certain exceptions, that "[e]very agent[2] shall, upon acceptance and approval of the working drawings and specifications, publish a notice to contractors of intention to receive bids and contract for the proposed work...." A.R.S. § 34-201(A). Although the statutes do not specify what type of work qualifies as "proposed work," the statutes do offer some indication of the definition of "proposed work." Section 34-102(A), relating to the employment of architects and engineers for public works projects, refers to construction of *"building* or *structure,* or additions to or alterations of existing *buildings* or *structures."* (Emphasis added.) Similarly, § 34-201(C), providing one exception to the public bidding requirements, refers to "[a]ny *building, structure,* addition or alteration...." (Emphasis added.)

■ We believe that A.R.S. §§ 34-201 and 34-102 must be construed together "in order to derive [their] true meaning." *Secrist v. Diedrich,* 6 Ariz.App. 102, 105-06 & n. 1, 430 P.2d 448, 451-52 & n. 1 (1967). From the plain language of the statutes, we conclude that proposed work encompasses at least buildings and structures. *See id.* at 106, 430 P.2d at 452 (in enacting the competitive bidding statute, the legislature "was intending to affect all contracts for the construction of buildings and structures, or alterations thereto, which are of such substance as to require working drawings and specifications...."); *see also* § 34-202(A) ("Proposals for construction of *buildings* or *structures* ... shall be accompanied by bids for all of the proposed work").

■ In its petition for review, Chandler appears to agree that the competitive bidding laws apply to buildings and struc-

tures, but argues—along with amicus Arizona League of Cities and Towns (the League)—that the court of appeals erred in concluding that the street improvements in question are structures. We disagree.

Chandler criticizes the court of appeals' reliance on *Secrist* for the proposition that landscaping was covered by the competitive bidding law. *See Achen–Gardner,* 167 Ariz. at 540, 809 P.2d at 965. Chandler is correct that the court of appeals in *Secrist* expressly refrained from "pass[ing] upon whether the 'landscaping' work ... constitutes the construction of a '... building or structure....'" *Secrist,* 6 Ariz.App. at 106, 430 P.2d at 452. In addition, we agree with Chandler that *City of Phoenix v. Wittman Contracting Co.,* 20 Ariz.App. 1, 509 P.2d 1038 (1973), a case interpreting the "public funds" language in A.R.S. § 34-241, does not help to determine whether the off-site improvements at issue are structures.

We believe, however, that the court of appeals correctly concluded that the term "structure" includes the road construction involved in the off-site improvements. The legislature used the term "building" as well as the term "structure" in the competitive bidding laws. Obviously, therefore, a structure must mean something different than merely a "building." As the court of appeals identified, courts in other states have interpreted structure in various contexts to include improved streets and highways. *See, e.g., Village of Niles Center v. Industrial Comm'n,* 371 Ill. 622, 21 N.E.2d 745, 747 (1939) (improved street a structure for purposes of worker's compensation statute); *City of Rock Island v. Industrial Comm'n,* 287 Ill. 76, 122 N.E. 82, 83 (1919) (same); *State ex rel. E.I. Dupont De Nemours & Co. v. Coda,* 103 W.Va. 676, 138 S.E. 324 (1927) (improved highway a structure for purposes of construction bond law); *State ex rel. West Virginia Sand & Gravel Co. v. Royal Indem. Co.,* 99 W.Va. 277, 128 S.E. 439, 443 (1925) (highway a structure for purposes of construction com-

---

**2.** The City of Chandler and its purchasing office are "agents" as defined in A.R.S. § 34-101.

pliance bond requirements).[3] We agree with such interpretations and believe that the legislature's use of the broad term structure reflects an intent that the bidding laws be applied to a broad range of situations. We note also that the legislature has amended the bidding statutes many times over the decades since its enactment and has never removed or replaced the word "structure" with one of more finite meaning.

Finally, the purposes of competitive bidding are "to promote competition, to guard against favoritism, fraud and corruption, and to secure the best work or supplies at the lowest price practicable." *Rollo v. City of Tempe*, 120 Ariz. 473, 474, 586 P.2d 1285, 1286 (1978); *see also* 10 *McQuillin* § 29.29. Given the purposes of the bidding statute (which are as relevant to the construction of public streets as to the construction of public buildings), the legislature's use of the general term "structure" rather than a narrower term, and the broad definition of the word "structure" in the case law, we conclude that the improvements in question are structures within the scope of the competitive bidding laws.

## B. The Development Agreement Statute and Competitive Bidding

In 1988, the legislature enacted A.R.S. § 9–500.05, which authorizes municipalities to enter into development agreements. Section 9–500.05 provides in relevant part as follows:

> A. A municipality, by resolution or ordinance, may enter into development agreements relating to property in the municipality and to property located outside the incorporated area of the municipality.
>
> \* \* \* \* \* \*

F. In this section, unless the context otherwise requires:

> 1. "Development Agreement" means an agreement between a municipality and a community facilities district pursuant to § 48–709, subsection C, a landowner or any other person having an interest in real property that may specify or otherwise relate to any of the following:
>
> \* \* \* \* \* \*
>
> (g) Conditions, terms, restrictions and requirements for public infrastructure and the financing of public infrastructure and subsequent reimbursements over time.

Chandler, Jeri–Co, and the League posit two arguments for the proposition that the development agreement renders the competitive bidding laws inapplicable. First, they argue that the off-site construction was part of the private development and not a public project requiring competitive bidding. Second, they argue that the development agreement law supersedes and provides an exception to the competitive bidding law.

### 1. *The Construction of the Off–Site Improvements Is Not a "Private" Project Exempt from Competitive Bidding*

■ Two factors persuade us that the off-site improvements are public projects and not merely part of the private development. First, the improvements are on public property. *Compare Twin State CCS Corp. v. Roberts*, 72 N.Y.2d 897, 532 N.Y.S.2d 746, 747, 528 N.E.2d 1219, 1220 (1988) (for purposes of wage law, installation of telecommunications system, involving "construction-like labor," in public building for use by public employees was public work), *and Long Island Lighting*

---

**3.** In addition, courts have construed various improvements other than buildings to be structures. *See, e.g., Clark v. Town of Estes Park*, 686 P.2d 777, 779 & n. 5 (Colo.1984) (parking lot a structure for purposes of zoning exemption law); *Beyt v. Woodvale Place Apartments*, 297 So.2d 448, 450 (La.App.1974) (boulevard for entrance and exit to apartment complex a structure under restrictive covenant); *Easy Living Mobile Manor, Inc. v. Eureka Fire Protection*

*Dist.*, 513 S.W.2d 736, 739 (Mo.App.1974) (concrete pad a structure requiring fire district inspection and fee); *Town of Jackson v. Town & Country Motor Inn, Inc.*, 120 N.H. 699, 422 A.2d 1034, 1035 (1980) (sign a structure under zoning law's pre-existing use provision); *McCormack v. Bertschinger*, 115 Or. 250, 237 P. 363, 365 (1925) (driveway and walk structures under mechanic's lien statute).

*Co. v. Industrial Comm'r,* 40 A.D.2d 1003, 338 N.Y.S.2d 751, 753–54 (1972) (contract for installation of street light standards is public work under wage law where city had option to purchase the equipment from utility), *aff'd,* 34 N.Y.2d 725, 357 N.Y.S.2d 493, 313 N.E.2d 787 (1974), *with Alaska State Fed'n of Labor v. State,* 713 P.2d 1208, 1210–11 (Alaska 1986) (provision of labor law relating to public construction not applicable to construction of community center funded in minor part by state grant where center not owned or controlled by state), *and Hughes v. Schaefer,* 294 Md. 653, 452 A.2d 428, 434–35 (1982) (under municipal development loan program, "City financing of construction to be let by the borrower, and not by the City, *on the borrower's own land* and for the borrower's own use is not a 'public work'" requiring public bidding) (emphasis added).

Second, under the development agreement, the city is to reimburse Jeri–Co for most or all of the cost of the improvements from public funds. *Cf. Erie County Indus. Dev. Agency v. Roberts,* 94 A.D.2d 532, 465 N.Y.S.2d 301, 306 (1983) (private construction project financed by industrial development bonds not public work for purposes of wage laws where "[n]o public funds are involved and no costs will be reimbursed by the government"), *aff'd,* 63 N.Y.2d 810, 482 N.Y.S.2d 267, 472 N.E.2d 43 (1984). Jeri–Co disputes this characterization of the funds for reimbursement, contending that "there is no burden whatsoever on the public treasury since the entire reimbursement must come from sales tax revenues generated by the businesses operating in the development." We are not persuaded. While it is possible that the tax revenue might never have existed without the development, once the development is undertaken the method of reimbursement cannot alter the fact that Jeri–Co will be reimbursed from tax money paid by the public with funds destined for and routed through the municipal treasury. *Compare Yohe v. City of Lower Burrell,* 418 Pa. 23, 208 A.2d 847, 850 (Pa.1965) ("The need for bidding requirements is just as compelling ... where the garbage collector is compensated directly by the recipi-

ents of his service as it is when the recipients pay for the service through the conduit of the municipal treasury. In each case, regardless of who makes the final payment, it is the taxpaying citizen who provides the necessary funds and whose interest must be protected."), *with Midwest Realty v. City of West Jordan,* 541 P.2d 1109, 1110–11 (Utah 1975) (no bidding required where city was to reimburse developer for installation of sewer lines in development where funds would be derived exclusively from regular sewer service fees paid by homeowners).

Jeri–Co additionally argues that the competitive bidding laws do not apply to the transaction before us because Jeri–Co is not an "agent" under the pertinent statutory definition. Section 34–201 requires that every "agent" seek bids for public projects, and § 34–101 defines "agent" as "any county, city or town, or officer, board or, commission thereof, and irrigation, power, electrical, drainage and flood control districts, tax levying public improvement districts, and county or city improvement districts." Although Jeri–Co is correct that it is not an "agent" as defined by the statute, we are unwilling to accept Jeri–Co's conclusion that the competitive bidding laws do not therefore apply.

The gist of Jeri–Co's argument is that a municipality can avoid the competitive bidding requirements by entering into an agreement with a private party whereby the municipality gives the private party control over the letting of the contract for public improvements; because the private party is not an "agent," the bidding laws do not apply at all. We do not believe the legislature intended the bidding laws to be so easily avoided.

Since they are based upon public economy and are of great importance to the taxpayers, laws requiring competitive bidding as a condition precedent to the letting of public contracts ought not to be frittered away by exceptions, but, on the contrary, should receive a construction always which will fully, fairly, and reasonably effectuate and advance their true intent and purpose, and which will

avoid the likelihood of their being circumvented, evaded, or defeated. Stern insistence upon positive obedience to such provisions is necessary to maintain the policy which they uphold.

*Secrist,* 6 Ariz.App. at 106, 430 P.2d at 452 (quoting 43 Am.Jur. *Public Works and Contracts* § 26); *see Central Arizona Water & Ditching Co. v. City of Tempe, Municipal Property Corp.,* 140 Ariz. 119, 122, 680 P.2d 829, 832 (Ct.App.1984) (section 34-221 of the public bidding laws applied where municipality used a private corporation merely as a financing vehicle for the construction of a public project).

In short, a municipality cannot alter the public nature of a project for the improvement of public property, to be paid in whole or in large part by public funds, by entering into a development agreement assigning a private party control over the bidding and letting of the construction contract.

### 2. *The Development Agreement Statute Does Not Create an Exception to the Competitive Bidding Laws*

■ In determining whether the development agreement statute supersedes the competitive bidding laws, we are mindful that whenever possible we adopt a construction of a statute that reconciles it with other statutes and gives force to all statutes involved. *Pima County v. Maya Constr. Co.,* 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988); *State v. Sweet,* 143 Ariz. 266, 270–71, 693 P.2d 921, 925–26 (1985). We also construe a statute in a manner that "will best serve the legislature's purposes, policies, and goals" apparent from the whole body of relevant law. *Tracy v. Superior Court,* 168 Ariz. 23, 31, 810 P.2d 1030, 1038 (1991). In this case, neither the language of the development agreement law nor the policies behind it compel the conclusion that the legislature intended to exempt public buildings or structures built pursuant to development agreements from the competitive bidding laws.

■ If the legislature meant for agents to dispense with public bidding on work performed under an A.R.S. § 9–500.05 development agreement, it could and should have made this explicit, given the importance of public bidding. It did not. Unless a statute's language or effect clearly requires the conclusion that the legislature must have intended it to supersede or impliedly repeal an earlier statute, we will not presume such an intent. *Maya Constr. Co.,* 158 Ariz. at 155, 761 P.2d at 1059. Here, the statute contains nothing evincing an intent to supersede the competitive bidding law. *Cf.* A.R.S. § 9–500.05(E) (expressly providing that the land subdivision laws in A.R.S. § 32–2181 do not apply to development agreements).[4]

Despite the absence of conflict between the development agreement law and the competitive bidding law on their face, Jeri-Co and Chandler argue that the public policy behind the development agreement law will be thwarted if compliance with the competitive bidding law is required. They argue that the purpose of the development agreement statute is not merely to expedite the construction of public improvements to facilitate private development—as the court of appeals explained—or to secure the construction of public improvements, but also is to allow municipalities to enhance their economies by attracting private development. They conclude that requiring competitive bidding will jeopardize the willingness of municipalities and developers to enter into development agreements.

We are not convinced that competitive bidding significantly diminishes the legislative incentives to private development embodied in A.R.S. § 9–500.05. Our holding does not prevent municipalities from agree-

---

4. *Cf. Judd Supply Co. v. Merchants and Mfrs. Ins. Co.,* 448 N.W.2d 895, 897 (Minn.App.1989) (mandatory bond laws for public works did not apply because "[p]rivate development is not transformed into 'public work' simply because it receives public financial assistance. Rather, in enacting this comprehensive series of tax increment financing statutes, the legislature created a new way to stimulate private economic growth."); *Uhls v. State ex rel. City of Cheyenne,* 429 P.2d 74, 90 (Wyo.1967) (competitive bidding statutes do not apply where "procedures for acquiring properties and issuing bonds are specific and definite in the industrial development projects act").

ing to reimburse developers for the off-site public improvements that often accompany private development. Developers may still be reimbursed for such construction—if they comply with the competitive bidding laws. We do not believe this places an undue burden upon a municipality attempting to attract businesses.

■ Finally, Jeri–Co argues that the purpose of competitive bidding, as applied to development agreements, has been served because Chandler's reimbursement obligation is limited to the amount of the low bid. In focusing exclusively on one purpose of competitive bidding—saving public funds—Jeri–Co ignores the other purposes of bidding: "to promote competition, to guard against favoritism, fraud and corruption, *and* to secure the best work or supplies at the lowest price practicable." *Rollo,* 120 Ariz. at 474, 586 P.2d at 1286 (emphasis added); *see also* 10 *McQuillin* § 29.-29; *Edwards v. City of Renton,* 67 Wash.2d 598, 409 P.2d 153, 155–58 (1965) (competitive bidding required where city reimbursed shopping center owners for installation of traffic signals). If a developer were permitted to reject all bids and simply perform the work itself—even if reimbursement would be limited to the amount of the lowest bid—there would be nothing to prevent the developer from seeking extra profit by rejecting the bids and constructing the improvements with materials and equipment of lesser quality than required in the original bid specifications. In such a case, the public would receive neither proper quality nor full value for its money, goals public bidding is designed to protect. While this may not be a problem under Jeri–Co's agreement with Chandler, there is no guarantee that other development agreements will safeguard the public. We conclude that while municipalities are free to enter into development agreements authorized by A.R.S. § 9–500.05, such arrangements must comply with the competitive bidding laws to serve *all* of the purposes of those laws.

## DISPOSITION

The off-site, street-related improvements are "structures" within the scope of the competitive bidding laws, and the fact that the improvements were provided for in a development agreement does not exempt them from bidding requirements. The court of appeals' opinion is vacated except for its conclusion granting the injunctive relief requested by Achen–Gardner and awarding Achen–Gardner its costs and attorneys' fees in the superior court and court of appeals. *See Achen–Gardner,* 167 Ariz. at 545, 809 P.2d at 970. The case is remanded to the superior court for any further necessary proceedings.[5]

MOELLER, V.C.J., and CORCORAN, J., and FRANK X. GORDON, Jr., J. (retired), concur.

JAMES DUKE CAMERON, Justice (Retired), dissenting.

I regret that I must dissent.

I agree with the majority that the outside improvements are structures subject to the competitive bidding law. I agree that the construction of the outside improvement is not a private project exempt from competitive bidding.

I dissent, however, because I believe that the requirements in the development agreement statute and the competitive bidding law have been complied with by the procedure followed here. There was notice, there was an open bid, and there was a decision to reject that bid, which the law allows.

Jeri–Co and Chandler complied with the spirit if not the letter of the competitive bidding law. The procedure followed protects the rights of the public. I would affirm the trial court.

**5.** The court of appeals ordered the superior court to "enjoin Chandler from reimbursing Jeri–Co for the public street improvements unless the competitive bidding laws under Title 34 are followed." *Achen–Gardner,* 167 Ariz. at 545, 809 P.2d at 970. The propriety of such an injunction was not included among the issues presented by the parties in their petitions for review. Consequently, we address neither the propriety of that remedy nor its continued viability. Thus, this disposition does not preclude the parties from questioning, on remand, the continuing suitability under the circumstances of such equitable relief.

ORDER ON MOTION FOR
RECONSIDERATION

FELDMAN, Chief Justice.

This matter was considered by the Court, Chief Justice Feldman, Vice Chief Justice Moeller, and Justices Corcoran and Gordon (retired) participating.

IT IS ORDERED that the Motion for Reconsideration is granted with regard to the Court of Appeals' injunction order and award of costs and attorneys' fees in the Superior Court and Court of Appeals to Achen–Gardner, Inc., and denied as to all other issues.

IT IS FURTHER ORDERED that the last sentence in the Opinion in this matter is amended, on page 18, as set forth on the attached page.

IT IS FURTHER ORDERED that Achen–Gardner's request for attorneys' fees in this Court is denied.

IT IS FURTHER ORDERED that Achen–Gardner is allowed its costs in this Court in the sum of $84.75.

CAMERON, J., would grant the Motion for Reconsideration for the reasons stated in his dissent.