909 P.2d 460

**Brian W. CURTIS and Hallie Dawes Curtis, husband and wife, Plaintiffs–Appellees,**

v.

**Perlie Logue MORRIS, a single man, Defendant–Appellant.**

No. 1 CA–CV 93–0351.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 24, 1995.

Review Granted Jan. 17, 1996.*

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Kenneth E. Chase, P.C. by Kenneth E. Chase, Scottsdale, for plaintiffs-appellees.

Ivy L. Kushner, Scottsdale, for defendant-appellant.

## OPINION

McGREGOR, Judge.

The primary issue before us is whether a court should dismiss a forcible entry and detainer (FED) action on grounds of abatement when an earlier-filed action seeking ejectment is pending. Because abatement bars the later action only if it raises issues substantially identical to those raised by the earlier action, we must determine whether Arizona's amended statutory scheme for FED actions permits the trial court to inquire into the validity of title, an inquiry central to an ejectment action. We hold that because the court cannot inquire into the validity of title in an FED action, FED and ejectment actions are not substantially identical. Consequently, abatement did not bar this FED action and the trial court did not err in permitting the action to proceed.

### I.

Before July 1990, appellant Perlie Logue Morris (Morris) owned residential property in New River, Arizona (the property). On approximately July 30, 1990, Morris transferred title of the property to appellees Brian W. and Hallie Dawes Curtis (Curtis). Two subsequent legal actions involving these parties reveal substantial discrepancies between their reported understandings of the reasons for, and effects of, the transfer of title.

In May 1992, Morris asserting that he owned the property, filed an action against Curtis (the 1992 action). Morris alleged Curtis loaned him money in 1990 to pay existing arrearages to avert a scheduled trustee's sale. According to Morris, Curtis "purported to transfer to themselves ownership of the property" in conjunction with this transaction. Morris claimed that Curtis defrauded him and sought the imposition of a constructive trust, judgment quieting title in himself, damages in the amount necessary to pay off the lienholder, and punitive damages.

Curtis answered and counterclaimed, alleging that Morris voluntarily sold them the property in exchange for their agreement to pay the arrearages and assume the mortgage. Curtis averred that although Morris agreed to rent the property on a month-to-month basis for $500 per month, he had fallen behind on his rent payments and had refused to quit the premises upon proper notice. Curtis requested an award of damages, judgment quieting title, and "an order of eviction."

In February 1993, Curtis filed this FED action. Morris responded by filing a motion to dismiss, arguing that the action should be abated because the 1992 action raised the same issues and asked for the same relief. Curtis responded that the actions raised different issues because the ejectment counterclaim involved paramount title and the FED action involved only actual possession. The trial court agreed with Curtis and denied the motion to dismiss.

The trial court subsequently tried this FED action and found Morris guilty of forcible entry and detainer. The trial court thus awarded Curtis judgment for restitution of the premises and for all rent due. Morris timely appealed. This court has jurisdiction pursuant to Arizona Revised Statutes Anno-

tated ("A.R.S.") sections 12–2101.B (1994) and 12–1182 (1994).

## II.

█ Grounds for abatement exist if the 1992 action and this FED action involved substantially identical subject matter, issues, and remedies. Our supreme court has stated:

> [T]he pendency of a prior action between the same parties for the same cause in a state court of competent jurisdiction gives grounds for the abatement of a subsequent action either in the same court or in another court of the state having like jurisdiction.... [T]he true test for determining whether parties and causes of action are the same for purposes of abatement, by reason of pendency of a prior action, ordinarily is, whether the two actions present a substantial identity as to parties, subject matter, issues involved, and relief demanded.

*Allen v. Superior Court,* 86 Ariz. 205, 209, 344 P.2d 163, 166 (1959) (citing *Davies v. Russell,* 84 Ariz. 144, 325 P.2d 402 (1958)).

### A.

To determine whether grounds for abatement exist, we first consider whether the 1992 action and this FED action raise substantially identical issues.

In addition to seeking other relief, Morris sought to establish title to the property in the 1992 action. Unless Arizona's statutory scheme for FED actions allowed the court to determine the validity of title in Curtis's later FED action, the issues raised in the two actions therefore cannot be substantially identical.

█ Plain statutory language prohibits inquiry into the validity of title in an FED action. *See* A.R.S. § 12–1177.A (1994). "On the trial of an action of forcible entry or forcible detainer, *the only issue shall be the right of actual possession and the merits of title shall not be inquired into." Id.* (emphasis added). In keeping with the prohibition set out in A.R.S. section 12–1177.A, Arizona courts traditionally have held that title cannot be an issue in an FED action. *See*

*Taylor v. Stanford,* 100 Ariz. 346, 348, 414 P.2d 727, 729 (1966); *Olds Bros. Lumber Co. v. Rushing,* 64 Ariz. 199, 203–04, 167 P.2d 394, 397 (1946).

In *Rushing,* our supreme court contrasted the statutory FED action with the common law action of ejectment:

> [FED] actions are statutory proceedings, the only means of trying the right to the possession of property at common law being the common law action of ejectment. The common law action of ejectment is now codified in this and most states of this country, and in such an action the Court may determine the question of which party has the paramount legal title to the premises for the purpose of determining who has the right to possession.
>
> Such, however, is not the case in a forcible entry and detainer action, for the object of such an action is to afford a summary, speedy and adequate remedy for obtaining possession of the premises withheld by a tenant in violation of the covenants of his tenancy or lease, or otherwise withheld within the meaning of the statute defining forcible entry and detainer. Indeed, the statutes of this state make that very plain and indicate quite clearly that the right to actual possession is the only issue to be determined in such an action.

64 Ariz. at 203–04, 167 P.2d at 397 (citations omitted).

Our supreme court reiterated the prohibition against trying title in an FED action in *Taylor:*

> Respect for *actual* possession of another, wrongful though it may be, is the essence of our forcible entry and unlawful detainer statutes. Thus, the party out of ·actual possession, whether the real owner or one entitled to a present right of possession, may not try the issue of title in a forcible entry or unlawful detainer case, for such an issue is to be decided in a suit for ejectment.

100 Ariz. at 348, 414 P.2d at 729 (emphasis in original).

Further distinguishing FED actions from other civil actions, *Rushing* stated:

The fact that a forcible entry and detainer action is to provide a speedy and adequate remedy for obtaining possession of premises is indicated by the shortness of the time within which the action must come to trial and the strict limitation on the length of time that the trial of such action may be postponed. *This is further indicated by the fact that a judgment in an action of forcible entry and detainer is not a bar to a subsequent proceedings between the same parties in a quiet title suit for the reason that the adjudication of the title is not available in such an action.*

64 Ariz. at 205, 167 P.2d at 398 (emphasis added) (citations omitted). Under these decisions, the trial court here could not adjudicate title in an FED action.

### B.

A recent decision of Division Two of this court, however, called into question the well established principle that title cannot be adjudicated in an FED action. *See Moreno v. Garcia,* 169 Ariz. 586, 588, 821 P.2d 247, 249 (App.1991). *Moreno* addressed the impact of the 1984 legislative changes to the FED statutes.

When our supreme court decided *Rushing* and *Taylor,* the FED statutes applied only to landlord/tenant situations. *See id.* (discussing historical definition of FED under A.R.S. § 12–1173 (1994)). In 1984, the legislature amended the FED chapter and defined additional situations that give rise to an FED action:

In addition to other persons enumerated in this article, a person in any of the following cases who retains possession of any land, tenements or other real property after he received written demand of possession may be removed through an action for forcible detainer . . . :

. . . . .

5. If the property has been sold by the owner and the title has been duly transferred.

A.R.S. § 12–1173.01.A (1994). *Moreno* held that these additional definitions of FED, specifically subsection 5, mean that title is now a proper subject of inquiry in an FED action.

In particular, *Moreno* held that a judgment in a prior FED action collaterally estopped a party in a subsequent suit brought to rescind a contract of sale for the property:

The issue of title was actually litigated in the forcible entry and detainer proceeding, and there was a full and fair opportunity for both parties to be heard. Appropriate evidence, including witnesses for each side, was presented. . . . Resolution of the title issue was essential to the decision whether appellee had the right to possession of the property. The decision on the merits as to possession was valid and final, and the parties were identical.

169 Ariz. at 588, 821 P.2d at 249. *Moreno* held that the prohibition against inquiring into title contained in A.R.S. section 12–1177.A no longer applies:

The forcible entry and detainer statutes were amended by the legislature in 1984. A.R.S. § 12–1173.01 substantially expands the definition of forcible entry and detainer to include several categories of possessor [sic] not previously covered. The traditional action was between a landlord and tenant and usually concerned the validity of a lease. The new statute now includes vendor/vendee situations, "if the property has been sold by the owner and the title has been duly transferred." A.R.S. § 12–1173.01(A)(5). All the cases cited by appellant as proscribing determination of title were decided before the enactment of this new statute. *See, e.g., Taylor v. Stanford,* 100 Ariz. 346, 414 P.2d 727 (1966); *Olds Bros. Lumber Co. v. Rushing,* 64 Ariz. 199, 167 P.2d 394 (1946). A.R.S. § 12–1173.01(C) states that:

[t]he remedies provided by this section are in addition to and do not preclude any other remedy granted by law.

We conclude that the legislature intended that the forcible entry and detainer action for possession now include situations in which title is in dispute and that, for purposes of collateral estoppel, the issue of title may be decided even though the court's remedial power extends only to awarding possession of the property. In

this case, [the] decision [in the prior FED action] was dispositive of the issue of title as to both actions.

*Id.* 169 Ariz. at 588–89, 821 P.2d at 249–50.

With respect, we disagree with the holding in *Moreno.* "We are reluctant to divide this court on an issue where the trial courts need definitive guidance." *Jepson v. New,* 160 Ariz. 193, 201, 772 P.2d 16, 24 (App.1989), *vacated in part,* 164 Ariz. 265, 792 P.2d 728 (1990). "[T]he principle of *stare decisis* and the need for stability in the law in order to have an efficient and effective functioning of our judicial machinery dictate that we consider decisions of coordinate courts as highly persuasive and binding. . . ." *Scappaticci v. Southwest Sav. & Loan Ass'n,* 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983) (citations omitted). After serious consideration, we conclude that *Moreno* was wrongly decided.

### C.

We find several compelling reasons for rejecting the interpretation afforded the FED statutes in *Moreno.*

First, the result in *Moreno* is inconsistent with the plain statutory language. Our supreme court has described A.R.S. section 12–1177.A as using "plain, unequivocal and positive language and definitely rais[ing] a prohibition to making title to the premises an issue" in an FED action. *Rushing,* 64 Ariz. at 204, 167 P.2d at 397.

█ Further, when the legislature enacted A.R.S. section 12–1173.01, it left A.R.S. section 12–1177.A intact. The legislative decision not to amend or repeal A.R.S. section 12–1177.A provides a clear indication that the legislature meant to retain the prohibition against deciding the issue of title in FED actions. *See Achen–Gardner, Inc. v. Superior Court,* 173 Ariz. 48, 54, 839 P.2d 1093, 1099 (1992). "Unless a statute's language or effect clearly requires the conclusion that the legislature must have intended it to supersede or impliedly repeal an earlier statute, we will not presume such an intent." *Id.*

Here, nothing related to the 1984 amendments to the FED statutes remotely indicates any legislative intent to supersede the express limitation of the scope of the inquiry in an FED action established by A.R.S. sec-

tion 12–1177.A. Moreover, A.R.S. section 12–1173.01 contains no language showing that the legislature, in extending the situations to which FED applies by adding A.R.S. section 12–1173.01, intended to amend by implication the express language of A.R.S. section 12–1177.A. A long, unbroken line of Arizona authority has interpreted A.R.S. section 12–1177.A and its predecessors as permitting only the issue of possession to be tried in an FED action. *See Taylor,* 100 Ariz. at 348, 414 P.2d at 729; *Rushing,* 64 Ariz. at 203–04, 167 P.2d at 397; *Sullivan v. Woods,* 5 Ariz. 196, 201, 50 P. 113, 115 (1897); *Bishop v. Perrin,* 4 Ariz. 190, 192, 35 P. 1059, 1059 (1894). If the legislature had intended to overturn both its own clear statutory language and the long-standing precedent interpreting that language, we believe the legislature would have made that intention clear. *See Achen–Gardner,* 173 Ariz. at 54, 839 P.2d at 1099.

█ We also believe that our holding is consistent with the canon of statutory construction that prefers an interpretation giving meaning to all parts of a statute over one that makes part of the statute meaningless:

> In construing a statute or rule, we presume that the promulgating body did not intend to do a futile act by including a provision that is not operative or that is inert and trivial. We must give each word, phrase, clause and sentence meaning so that no part of the rule is rendered superfluous, void, insignificant, redundant or contradictory.

*Patterson v. Maricopa County Sheriff's Office,* 177 Ariz. 153, 156, 865 P.2d 814, 817 (App.1993) (citations omitted).

█ Under our analysis, the apparent conflict between A.R.S. section 12–1173.01 and A.R.S. section 12–1177.A vanishes, permitting us to attribute meaning to each section. The former merely extends the FED remedy in a new set of situations, including the judicial and non-judicial foreclosure of deeds of trust and mortgages and, as *Moreno* discussed, that in which property has been sold by the owner and title has been duly transferred. The latter continues to define those issues appropriate for consideration in FED

actions involving any of the situations described in A.R.S. sections 12–1173 and 12–1173.01. The two sections thus serve different functions and are not inconsistent. Determining the right to *possession* following a sale and due transfer of title does not require the same analysis as does an examination of the *validity* of that sale and title transfer.

It is true, as *Moreno* observes, that the 1984 amendments include situations in which title may be in dispute. 169 Ariz. at 589, 821 P.2d at 250. However, the possibility that issue may arise in an FED action is nothing new. In *Rushing*, for example, the FED defendant desired to defeat the plaintiff's action by showing that he held title to the property by virtue of his purchase at a tax sale. 64 Ariz. at 202, 167 P.2d at 396. Our supreme court, following the long history of FED actions, held that the defendant could not defend the action on that basis. *Id.* at 203–04, 167 P.2d at 397. Similarly, in *Merrifield v. Merrifield*, 95 Ariz. 152, 154, 388 P.2d 153, 155 (1963), our supreme court set aside a decision for the defendant in an FED action because the trial court improperly inquired into the merits of a quitclaim deed that the defendant asserted she executed under duress. The same approach applies to situations defined in A.R.S. section 12–1173.01.-A.5: if the plaintiff seeks to use an FED action to oust the defendant following a sale and due transfer of title, the defendant cannot challenge and the plaintiff cannot establish the validity of the sale in the FED action. That issue can be decided only in an action for ejectment or quiet title. A.R.S. sections 12–1173.01 and 12–1177.A thus are entirely consistent.

 Permitting questions of validity of title to be determined in FED actions also would undermine the purpose of those actions, which is "to afford a summary, speedy and adequate remedy for obtaining possession of premises withheld by tenants...." *Rushing*, 64 Ariz. at 205, 167 P.2d at 397. FED actions proceed according to strict, short procedural timelines,[1] which are an integral part of the right itself. *Hinton v. Hotchkiss*, 65 Ariz. 110, 116, 174 P.2d 749, 753 (1946). As our supreme court pointed out nearly fifty years ago,

> this objective [of affording a summary, speedy and adequate remedy] would be entirely frustrated if the defendant were permitted to deny his landlord's title, or to interpose customary and usual defenses permissible in the ordinary action at law.... And for the same reason, the merits of the title may not be inquired into in such action, for if the merits of the title and the other defenses above enumerated were permitted and the court heard testimony concerning them, then other and secondary issues would be presented to the court and the action would not afford a summary, speedy and adequate remedy for obtaining possession of the premises.

*Rushing*, 64 Ariz. at 205, 167 P.2d at 397.

Finally, permitting an inquiry into the validity of title in an FED action would pose substantial difficulties for the parties. The short time permitted before trial would render adequate discovery in actions involving potentially complex issues such as fraudulent misrepresentations, loan transactions, or multiple transfers of title nearly impossible. Because an FED action does not bar subsequent proceedings between the parties to determine issues other than the immediate right to possession, those issues are better resolved in proceedings designed to allow full exploration of the issues involved. *See Rushing*, 64 Ariz. at 205, 167 P.2d at 397–98.

### D.

 For the foregoing reasons, we conclude that the addition of A.R.S. section 12–1173.01 does not extend the proper scope of inquiry in an FED action beyond the issue of right to possession. The court in this FED action therefore could not determine the validity of title to the property; because that issue is part of the 1992 action, the issues in

---

1. *See* A.R.S. section 12–1175 (1994) (clerk must issue summons no later than next judicial day and serve summons at least two days before return day); A.R.S. section 12–1176.A (1994) (trial date must be set no more than five days from filing of complaint); A.R.S. section 12–1177.C (1994) (court may postpone trial maximum of three days in justice court or ten days in superior, for good cause shown).

the two actions were not substantially identical. The trial court therefore properly denied the motion to dismiss on the basis of abatement.

### III.

After Morris filed the notice of appeal, the trial court entered an amended judgment in which it awarded attorneys' fees to Curtis pursuant to A.R.S. section 12–341.01.A (1992). When a notice of appeal has been filed, the trial court loses jurisdiction to amend the judgment to enter an award of attorneys' fees. *Trebilcox v. Brown & Bain, P.A.*, 133 Ariz. 588, 591, 653 P.2d 45, 48 (App.1982), *overruled on other grounds, Barmat v. John & Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218 (1987). Although Morris did not raise this issue, it is jurisdictional: a trial court's order made in derogation of appellate jurisdiction is null. *Whitfield Transp., Inc. v. Brooks*, 81 Ariz. 136, 141, 302 P.2d 526, 529 (1956). The amended judgment is therefore a nullity.

### IV.

For the foregoing reasons, we affirm the original judgment of the trial court.

CONTRERAS, P.J., and MELVYN T. SHELLEY, Retired Judge,** concur.

** The Honorable Melvyn T. Shelley, retired judge of the Arizona Court or Appeals, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to the Arizona Constitution, Article 6, section 20, and A.R.S. section 38–813 (1985).

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.